## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Twin Cities Safety LLC, d.b.a., HeartCert, Numan Vocational Agency, Scofield Nursing Assistant Training Center LLC, Loving Lotus CNA Training Academy L.L.C., CPR Partner, LLC, d.b.a. CPR Training Center, Nostalgia School of Health Careers L.L.C., Prime Time Medical Training LLC, Accelerated School of Nursing Assistant, North American Medical Academy Co.,

               Plaintiffs,

v.

Roger Moe, in his official capacity as Chair of the Board of Trustees and Trustee of the Minnesota State Colleges and Universities, or his successor, George Soule, in his official capacity as Vice Chairman of the Board of Trustees and Trustee of the Minnesota State Colleges and Universities, or his successor, Jay Cowles, in his official capacity as the Treasurer of the Board of Trustees and Trustee of the Minnesota State Colleges and Universities, or his successor, Dawn Erlandson, in her official capacity as a Trustee of the Minnesota State Colleges and Universities, or her successor, April Nishimura, in her official capacity as a Trustee of the Minnesota State Colleges and Universities, or her successor, Kathy Sheran, in her official capacity as a Trustee of the Minnesota State Colleges and Universities, or her successor, Cheryl Tefer, in her official capacity as a Trustee of the Minnesota State Colleges and Universities, or successor, Javier Morillo, in his official capacity as a Trustee of the Minnesota State Colleges and Universities, or his successor,

Court File No. 23-3758

**Complaint for Declaratory and Injunctive Relief**

Christopher Richter, in his official capacity
as a Trustee of the Minnesota State Colleges
and Universities, or his successor, Alex
Cirillo, in his official capacity as a Trustee of
the Minnesota State Colleges and
Universities, or his successor, Micah Coatie,
in his official capacity as a Trustee of the
Minnesota State Colleges and Universities,
or his successor,  Jim Grabowska, in his
official capacity as a Trustee of the
Minnesota State Colleges and Universities,
or his successor, Tim Huebsch, in his
official capacity as a Trustee of the
Minnesota State Colleges and Universities,
or successor, Idman Ibahim, in her official
capacity as a Trustee of the Minnesota State
Colleges and Universities, or her successor,
Jerry Janezich, in his official capacity as a
Trustee of the Minnesota State Colleges and
Universities, or his successor,  Dennis
Olson Jr., in his official capacity as
Commissioner of the Minnesota Office of
Higher Education, or his successor, and
HealthForce Minnesota, and Valerie DeFor,
in her official capacity as Executive
Director of Minnesota State HealthForce
Center of Excellence, or  her successor,

Defendants.

The Plaintiffs bring this action against the Defendants as follows:

1.      The Plaintiffs seek declaratory and injunctive relief regarding the Minnesota legislative statutory scheme found under 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42. Generally, as the result of the COVID-19 epidemic, the state of Minnesota experienced a shortage of nurses and in particular, nursing assistants to such an extent it endangered the health and welfare of its citizens. In response, Minnesota sought assistance from all corners of the state. Using federal COVID funding in 2021, Minnesota "partnered" with colleges and high schools to implement certified nursing assistant programs to certify tens of hundreds of nursing assistants. Then, in 2023, the State provided monetary incentives through a legislative enacted appropriation to colleges and high schools to provide the certified nursing assistant program *free* for students. However, already established private businesses that provided certified nursing assistant programs were left without any corresponding monetary incentive, driving the Plaintiffs to the brink of non-existence. Plaintiffs have no competitive footing against the state providing certified nursing assistant programs for free to students.

2.      The Minnesota legislative scheme to provide state certified nursing assistant programs for free to students at the expense of private businesses providing the same state certified nursing assistant programs violates:

- the Sherman Act, 15 U.S.C. § 1, et seq.;

- the U.S. Constitution's Equal Protection Clause; and

- the Minnesota Constitution's article XII, § 1's prohibition on special laws.

3.      The State's legislative enactment is unconstitutional and the Defendants must be refrained from infringing upon the Plaintiffs' protected constitutional rights. Hence, declaratory and injunctive relief is appropriate and necessary.

## Jurisdiction

4.      This Court has jurisdiction under 15 U.S.C. § 15 (Sherman Anti-Trust Act), 28 U.S.C. §§ 1331, 1343 (1)-(4), 42 U.S.C. §§ 1983, 1985(2), (3) and § 1988 (civil rights statutes) and 28 U.S.C. § 1367 (supplemental jurisdiction).

5.      This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure, Rules 57 and 65, and has general legal and equitable powers.

6.      Venue is proper in this Court under 28 U.S.C. § 1391 and other applicable law, because the alleged deprivations of federal rights occurred in counties located within this District of Minnesota, and future deprivations of its constitutional rights are threatened and are likely to occur in this District.

## Parties

**Plaintiffs:**

7.      Plaintiff Twin Cities Safety LLC is a woman owned small for-profit Minnesota limited liability company owned by Christina Smith. It does business under the assumed name HeartCert. Since 2020, it has run a state-approved Certified Nursing Assistant training program. HeartCert has certified or registered CNAs over 2,000 persons from 2020 to date, or currently about 700 per year at a cost per person between $1,250–$1,500.00. HeartCert's principal place of business is in Washington County.

8.      Plaintiff Numan Vocational Agency is a small Minnesota nonprofit corporation since 2015. Numan's Executive Director is Khadija Zeig. Originally from Somali, Zeig created Numan to teach English as a second language to other minority Ethiopian groups and languages, such as, Oromo (are a Cushitic ethnic group native to the Oromia region of Ethiopia and parts of Northern Kenya) and Amharic (an Ethiopian Semitic language). Numan runs a state-approved CNA training program and has done so since 2012. Numan has certified approximately 40 CNAs who were high school students in 2023.  Numan has received grants to train high school students who have English as a second language and train them to be CNAs.  However, for adult students, grants are not available and Numan would charge $1,500.00 for a CNA certification which it can charge for services as a non-profit organization. Numan is located in Ramsey County.

9.      Plaintiff Scofield Nursing Assistant Training Center LLC is a Minnesota limited liability company. It runs a state-approved CNA training program.  It is located in Isanti County.

10.     Plaintiff Loving Lotus CNA Training Academy L.L.C. is a small minority owned for-profit Minnesota limited liability company that does business under the assumed name CPR Training Center, located in Ramsey County. Keisha Williams established the company in 2020 and since that time has run a state-approved CNA training program. Hundreds of persons have become CNAs through Loving Lotus. Tuition per person is $1,400.00.

11.     Plaintiff CPR Partner, LLC is a small minority owned for-profit Minnesota limited liability company, doing business as CPR Partners Training Center. Mark Y. Nyemah,

III established the business in 2015 and since 2021 has a state-approved CNA training

program. Located in Hennepin County, the CNA program has trained at least 80 CNAs at a

fee of $1,300.00 since the program's inception.

12.     Plaintiff Nostalgia School of Health Careers L.L.C. is a small minority owned

for-profit Minnesota limited liability company established in 2021 by Christine Okundaye.

Nostalgia has had   a state-approved CNA training program since 2021and has had 30

students graduate as CNAs at a rate of $750 per person.  The company is located in

Hennepin County.

13.     Plaintiff Prime Time Medical Training LLC is a small minority owned for-

profit Minnesota limited liability company established in 2018 by LuVessie Knox. It has had

a state-approved CNA training program since 2018, having graduated over 200 students

charging $1,450.00 per person. Prime Time is located in Anoka County.

14.     Plaintiff Accelerated School of Nursing Assistant, located in Hennepin

County, is a small minority owned Minnesota for-profit business operated by Mitch Dorbor.

Accelerated was established in 2012 and has run a state-approved CNA training program

since that time. The Accelerated program has graduated between 75 and 100 per year CNAs

in past years.

15.     Plaintiffs North American Medical Academy Co. is a small minority owned

for-profit company operated by Jeremiah SK Pojah. The company has been in existence

since 2018. It runs a state-approved CNA training program and over the years has graduated

between 10,000 and 15,000 CNAs. The cost for the CNA training was $1,200.00. It is

located in Hennepin County.

**Defendants:**

16.     Defendant Roger Moe, or his successor, is Chair and Trustee of the Minnesota State Colleges and Universities.  The Board of Trustees of the Minnesota State Colleges and Universities is the governing body of Minnesota's system of state colleges and universities.

17.     Defendant George Soule, or his successor, is Vice Chairman and Trustee of the Minnesota State Colleges and Universities.

18.     Defendant Jay Cowles, or his successor, is Treasurer and Trustee of the Minnesota State Colleges and Universities.

19.     Defendant Dawn Erlandson, or her successor, is a Trustee of the Minnesota State Colleges and Universities.

20.     Defendant April Nishimura, or her successor, is a Trustee of the Minnesota State Colleges and Universities.

21.     Defendant Kathy Sheran, or her successor, is a Trustee of the Minnesota State Colleges and Universities.

22.     Defendant Cheryl Tefer, or her successor, is a Trustee of the Minnesota State Colleges and Universities.

23.     Defendant Javier Morillo, or her successor, is a Trustee of the Minnesota State Colleges and Universities.

24.     Defendant Christopher Richter, or his successor, is a Trustee of the Minnesota State Colleges and Universities.

25.    Defendant Alex Cirillo, or his successor, is aTrustee of the Minnesota State Colleges and Universities.

26.    Defendant Micah Coatie, or his successor, is a Trustee of the Minnesota State Colleges and Universities.

27.    Defendant Jim Grabowska, or his successor, is a Trustee of the Minnesota State Colleges and Universities.

28.    Defendant Tim Hersch, or his successor, is a Trustee of the Minnesota State Colleges and Universities.

29.    Defendant Idman Ibahim, or her successor, is a Trustee of the Minnesota State Colleges and Universities.

30.     Defendant Jerry Janezich, or his successor, is a Trustee of the Minnesota State Colleges and Universities.

31.    The Board of Trustees is charged with oversight of the system and has responsibility for system planning, academic programs, fiscal management, personnel, admissions requirements, tuition and fees, and rules and regulations.

32.    Defendant Dennis Olson Jr., or his successor, is the Commissioner of the Minnesota Office of Higher Education.

33.    Defendant HealthForce Minnesota is a collaborative partnership of education, industry, and community that was created to increase the number and expand the diversity of healthcare workers; to integrate health science education practice and research; and to build capacity for education and industry to collaborate to enhance patient care.

34.     Valerie DeFor, or her successor, is the Executive Director of Minnesota State HealthForce Center of Excellence.

35.     The defendants are not being sued for damages, but for prospective declaratory and injunctive relief.

**Facts**

36.      Each plaintiff is a successful small private business providing a state certified nursing assistant program. Each plaintiff, depending upon their respective business model, will charge a fee for the program from $750.00 to $1,500.00 per person.

37.     As noted, some of the plaintiff businesses are owned by minority individuals. They successfully meet the needs of racial and ethnic minority groups, who would otherwise feel marginalized or intimidated in larger settings such as colleges or community colleges because of age or cultural or language differences.

38.     Federal law requires Certified Nursing Assistant (CNA) training prior to a person being employed as a nurse's aide in a nursing home or other facility employing a nurse's aide.

39.      Under 42 U.S. Code § 1396r, titled "Requirements for Nursing Facilities," nursing facilities are required to employ only nursing aides who have completed a training and competency evaluation program or competency evaluation program approved by the State.

40.     Federal regulations under 42 U.S. Code § 1396r (5), require that nurse aides be trained. Excerpts of the provision are accurately quoted as follows:

REQUIRED TRAINING OF NURSE AIDES
* * *
i)Except as provided in clause (ii), a nursing facility must not use on a full-time basis any individual as a nurse aide in the facility on or after October 1, 1990, for more than 4 months unless the individual—
(I)has completed a training and competency evaluation program, or a competency evaluation program, approved by the State under subsection (e)(1)(A), and
(II)is competent to provide nursing or nursing-related services.
(C)Competency
The nursing facility must not permit an individual, other than in a training and competency evaluation program approved by the State, to serve as a nurse aide or provide services of a type for which the individual has not demonstrated competency and must not use such an individual as a nurse aide unless the facility has inquired of any State registry established under subsection (e)(2)(A) that the facility believes will include information concerning the individual.

41.    Federal regulations under 42 U.S. Code § 1396r (F), defines a "nurse aide."

Excerpts of the provision are accurately quoted as follows:

(F)"Nurse aide" defined

In this paragraph, the term "nurse aide" means any individual providing nursing or nursing-related services to residents in a nursing facility, but does not include an individual—
(i)    who is a licensed health professional (as defined in subparagraph (G)) or a registered dietician, or
(ii)    who volunteers to provide such services without monetary compensation.
Such term includes an individual who provides such services through an agency or under a contract with the facility.

42.    Under the same federal code provision, 42 U.S. Code § 1396r, the state must

maintain a nurse's aide registry. Minnesota maintains a nurse's aide registry. *See e.g.,*

https://www.health.state.mn.us/facilities/providers/nursingassistant/index.html.

43.    Accordingly, to align with and adhere to federal regulations regarding nursing

facilities, nursing aides, and nursing aide registries, Minnesota has enacted laws such as Minn.

Stat. § 144A.61.

10

44.     Accordingly, Minnesota Statutes § 144A.61, titled "Nursing Assistant Training," requires that nursing assistants be trained and certified.

45.     Nursing assistants are defined under Minnesota Statutes § 144A.61, subd. 2, which is accurately quoted as follows:

> For the purposes of this section and section 144A.611 "nursing assistant" means a nursing home or certified boarding care home employee, including a nurse's aide or an orderly, who is assigned by the director of nursing to provide or assist in the provision of nursing or nursing-related services under the supervision of a registered nurse. "Nursing assistant" includes nursing assistants employed by nursing pool companies but does not include a licensed health professional.

46.     Certified nursing assistants in Minnesota perform a variety of important health-care functions in Minnesota hospitals, long-term care facilities, and veterans' homes, and other facilities. Their roles include but not limited to, transporting, bathing, and feeding hospital patients, stocking medical supplies, or logging patient information.

47.     Under federal and state law, becoming a Certified Nurse Assistant (CNA) in Minnesota requires two steps.

48.     First, a student must complete 75 hours of training from a state-approved CNA training program.

49.     Second, a student must then pass the Minnesota CNA competency examination.

50.     Upon successful completion of the competency exam, the Minnesota Department of Health Nursing Assistant Registry issues the student a nursing assistant certificate.

51.     Under the applicable federal law, CNA training programs require state approval as meeting the minimum standards established under federal law.  See Exhibit B.

52.     42 CFR 483.152, titled "Requirements for approval of a nurse aide training and competency evaluation program," regulates state approval of nurse aide training and competency evaluation programs.  See Exhibit A.

53.     Minnesota approves nurse aide training programs. (See: https://www.health.state.mn.us/facilities/providers/nursingassistant/starttrainprog.html).

54.     In accordance with federal law, that is, 42 CFR § 483.152, Minnesota has established the minimal state  requirements for nurse aide training programs:

**Minnesota-Approved Nurse Aide Training Curricula**

The MDH Nursing Assistant Registry has approved the following curriculums as meeting federal and state requirements for training nurse aides.

Minnesota State-Long Term Care Nursing Assistant and Home Health Aide Curriculum. This curriculum must be at least 75 hours in length. At least 16 of the 75 hours are supervised practical training with a live person in a lab or other setting.

o   Instructor must complete Train the Trainer if using the Minnesota State Long-Term Care Nursing Assistant and Home Health Aide Curriculum and the training program is nursing home based or independent. Submit copy of Minneapolis College Train the Trainer certificate if required.
o   Train the Trainer is offered through Minneapolis College. Please call 612-659-6500 for dates of training and registration.

American Red Cross Nurse Assistant Training Fourth Edition. This curriculum must be at least 75 hours in length. At least 16 of the 75 hours are supervised practical training with a live person in a lab or other setting.

o   Instructor must complete Red Cross FIT training.
o   Contact information: Kristen.threinen@redcross.org or 612-239-7921.

Minnesota State Health Care Core Curriculum/Nursing Assistant (HCCC/NA). This curriculum must be at least 128 hours in length. 64 hours

12

completing the 7 modules of Health Care Core, 40 hours of lab instruction and 24 hours of supervised practical training with a live person in a lab or other setting. See: Getting Started Using the HCCC.

- o Instructors must complete the Educate the Educator.
- o The link on the HealthForce Minnesota Educate the Educator page will bring you to the registration page at Anoka Ramsey: Getting Started Using the HCCC.

8th Edition of the American Health Care Association's (AHCA) "HOW TO BE A NURSE ASSISTANT" curriculum. This curriculum must be at least 75 hours in length. At least 16 of the 75 hours are supervised practical training with a live person in a lab or other setting.

- o This curriculum contains a Train the Trainer component for the online curriculum only.

OnTrack Nursing Assistant Training, developed by Minnesota's LeadingAge Foundation, powered by EduCare. This curriculum must be at least 75 hours in length. At least 16 of the 75 hours are supervised practical training with a live person in a lab or other setting.

- o This curriculum contains a Train the Trainer component. Please call 651-425-1110 for the online RN instructor Train the Trainer for the OnTrack curriculum.

Hartman's Nursing Assistant Care Long Term Care and Home Care, Third and Fourth Edition curriculum and Hartman's Nursing Assistant Care: Long Term Care, Fifth Edition. At least 16 of the 75 hours are supervised practical training with a live person in a lab or other setting.

- o No Train the Trainer component required.
- o Contact information: 800-999-9534 or Hartman website.

Sanford Health Nursing Assistant Training Program curriculum. At least 16 of the 75 hours are supervised practical training with a live person in a lab or other setting.

- o No Train the Trainer component required.
- o Contact information: NAProgram@sanfordhealth.org.

*See* https://www.health.state.mn.us/facilities/providers/nursingassistant/curriculum.html#:

~:text=Minnesota%20State%20Health%20Care%20Core,a%20lab%20or%20other%20setti

ng. (Last visited Dec. 6, 2023).

     55.    Plaintiffs, like any other entity seeking to become a CNA state approved

program provider, must meet the state's criteria as aligned with federal law:

   a.  An approved nurse aide training and competency evaluation program must be at least 75 clock hours in length. Training includes 16 hours of supervised practical training with a live person in a laboratory or other setting and curriculum instruction/skills totaling 75 hours. Location of or method of curriculum instruction and supervised practical training identified in application packet.

   b.  Select a curriculum from our list of approved Minnesota nurse aide training curriculums. See Minnesota Approved Nurse Aide and Training Curriculum.

   c.  Federal and state regulations and program requirements included in the Federal NATCEP Resource. Nurse aide training program applicants declare in initial application to read and implement Federal of NATCEP Resource requirements. Federal Nurse Aide Training and Competency Evaluation Program Resource (PDF)

   d.  See Frequently Asked Questions about Nurse Aide Training and Competency Evaluation Program (PDF).

   e.  Qualifications for staff submitted with application for approval.

   f.  For information and questions, email: Health.nar.coord@state.mn.us

    **Instructor qualifications:**

   a.  Minnesota RN with a minimum of two years of licensed nursing experience in the US as evidenced by screen shot from Minnesota Board of Nursing website.

   b.  At least one year in the provision of long term care facility services in the US as evidenced by licensed nursing experience resume. Examples of long term care facility services are employment in a nursing home or assisted living facility. Home health experience providing care in private homes only is not included.

   c.  Total licensed nursing experience can be as a LPN but must currently be a RN. Licensed nursing experience does not include nurse aide.

d.  Train the Trainer certificate if required by chosen curriculum as identified in Approved Minnesota Nurse Aide and Training Curriculum.

e.  Train the Trainer certificates are specific to a given curriculum, they are not interchangeable.

* * *

https://www.health.state.mn.us/facilities/providers/nursingassistant/starttrainprog.html

(Last visited Dec. 6, 2023).

56.     The website notes that, "Federal law allows up to 90 days for approval of a completed application. All state-approved CNA training programs offer substantially the same state-mandated instruction—the instruction needed to satisfy the first step for becoming a CNA in Minnesota."

57.     To offer a state-approved CNA training program in Minnesota, an organization must submit to the Minnesota Department of Health Nursing Assistant Registry a Nurse Aide Training and Competency Evaluation Program Provisional Application Form.

58.     If the applicant meets the Minnesota Department of Health's requirements, the applicant can then receive provisional approval.

59.     To receive full approval, the applicant must then, within six months, conduct the required training program for a class of at least one student.

60.     These approval requirements are the same for public and private organizations.

61.     All the plaintiffs have gone through this process and obtained full approval from the Minnesota Department of Health Nursing Assistant Registry.

62.   Each plaintiff has a business that provides CNA training through a state approved program.

63.   As a business, each plaintiff charges on average about $750.00 to $1,500.00 for CNA training.

64.   In December 2021, Governor Walz issued a call for high school and college health science students to be trained as nursing assistants. He sought $3,424,933 from the American Rescue Plan State Fiscal Recovery Funds to implement what was referred to as the "Next Generation Nursing Assistant Training for High School and College Students."

65.   The State's initiative would cover all costs for nursing assistant training to the student for tuition, books-materials, scrubs, and the certification exam meaning that students received the program and exam for free.

66.   In September 2022, a second round of funding was approved in the amount of $2,445,325 from Minnesota's $190 million appropriated moneys for COVID-19 management costs for the continuation of the previous $3.4 million Next Generation Nursing Assistant Training initiative.

67.   The State's second round of Next Generation Nursing Assistant Training funding would cover all costs for nursing assistant training to the student for tuition, books-materials, scrubs, and the certification exam, meaning that students received the program and exam for free.

68.   Minnesota State HealthForce Center of Excellence was designated as the agency to lead or assist in the staffing and administrating the initiative.

69.     According to the Minnesota Office of Higher Education's Nursing Assistant Initiative Monitoring Report dated September 30, 2023, Exhibit C, for fiscal year 2022, it made grant agreements to schools and entities to provide students with free access to CNA programs and exams in the amount of over $2.6 million.

70.     Plaintiff HealthCert, learning of the possibility of obtaining funding for fiscal year 2022, to provide free student CNA programing and exams, requested grant moneys from the Minnesota Office of Higher Education.  The Office of Higher Education was reluctant to provide moneys to HealthCert at first, but would eventually provide a grant to HealthCert for about 100 students.

71.     But for HealthCert, other Plaintiffs were not aware of the possibility of obtaining funding from the state during the fiscal year 2022, and, hence, did not seek possible state funding. Further, there is no indication the state reached out to private entities the state had previously approved CNA programs.

72.     Meanwhile, according to the Monitoring Report, Exhibit C, the Minnesota Office of Higher Education did provide grant agreements with other private entities who had state approved CNA programs.

73.     During fiscal year 2023 (September 22, 2022 through February 15, 2023), according to the Monitoring Report, Exhibit C, grants agreements amounted to over $1.6 million.  The Monitoring Report did not list any private entity, but one, that were provided grant agreements for fiscal year 2023.

74.     Plaintiff HealthCert sought grant agreements with the Minnesota Office of Higher Education but was denied indicating that no private entities with approved CNA programs would receive grants for certifying CNAs.

75.     The Minnesota Office of Higher Education knew that private entities had state approved CNA programs.

76.     The Minnesota Office of Higher Education refused to provide private entities, such as the Plaintiffs, opportunities or give grant agreements to provide CNA programs and exams for their students for free.

77.     The Minnesota Office of Higher Education, by its commissioner, entered into grant agreements, with the following Minnesota State Colleges and Universities to provide students with free CNA training and exams on their respective campuses during fiscal years 2022 or 2023 or both:

- Alexandria Technical and Community College, Alexandria; FY22 and FY23
- Anoka Ramsey Community College, Coon Rapids; FY22 and FY23
- Anoka Technical College, Anoka; FY22 and FY23
- Central Lakes College, Brainerd; FY22
- Central Lakes College, Staples; FY22
- Century College, White Bear Lake; FY22 and FY23
- Dakota County Technical College, Rosemount; FY22 and FY23
- Hennepin Technical College, Eden Prairie; FY22 and FY23
- Minneapolis Community and Technical College, Minneapolis; FY22 and FY23
- Minnesota North College, Grand Rapids; FY22 and FY23
- Minnesota North College, Hibbing; FY22
- Minnesota North College, Virginia; FY22
- Minnesota State College Southeast, Red Wing; FY22 and FY23
- Minnesota State College Southeast, Winona; FY22
- Minnesota State Community and Technical College, Moorhead; FY22 and FY23
- Minnesota State University Mankato, Mankato; FY23
- Minnesota West Community and Technical College, Granite Falls; FY22 and FY23
- Minnesota West Community and Technical College, Worthington; FY22
- Northland Community and Technical College, East Grand Forks; FY22 and FY23
- Pine Technical and Community College, Pine City; FY22 and FY23

18

- Ridgewater College, Hutchinson; FY22 and FY23
- Ridgewater College, Willmar; FY22
- Riverland Community College, Albert Lea; FY22 and FY23
- Riverland Community College, Austin; FY22 and FY23
- Riverland Community College, Owatonna; FY22
- Rochester Community and Technical College, Rochester; FY22
- Saint Paul College, St. Paul; FY22 and FY23
- South Central College, Mankato; FY22 and FY23
- St. Cloud Technical Community College, St. Cloud; FY22 and FY23.

78.  The Minnesota Board of Trustees accepted the agreements to provide CNA programs and exams to students for free to the exclusion of private entities, such as, and including Plaintiffs.

79.  The Minnesota Office of Higher Education provided grants to Minnesota state colleges to provide CNA programs and exams to students for free to the exclusion of private entities, such as, and including the Plaintiffs.

80.  The Minnesota Office of Higher Education provided grants to Minnesota high schools to provide CNA programs and exams to students for free to the exclusion of private entities, such as, and including the Plaintiffs. The high schools, identified in the Office's Monitoring Report (Exhibit C) are listed as follows:

- 916 Career and Technical Center, St. Paul
- Alexandria High School, Alexandria
- Anoka-Hennepin STEP, Anoka
- Browerville High School, Browerville
- Elk River High School, Elk River
- Forest Lake High School, Forest Lake
- Isle School District, Isle
- Mankato West High School, Mankato
- Marshall Area Technical and Educational Center, Marshall
- Minnesota North College (Mesabi Range College), Virginia
- Minnesota West Community and Technical College, Granite Falls
- Nevis High School, Nevis
- Roseau High School, Roseau
- Rosemount High School, Rosemount

- Rushford Peterson High School, Rushford
- Spring Lake Park High School, Spring Lake Park
- St. Louis Park High School, St. Louis Park
- West Central Area High School, Barrett
- Wright Technical Center, Buffalo.

81.     According to the Monitoring Report (Exhibit C), by mid-February 2023, the

State of Minnesota had trained 1,737 students for free to enter the workforce as CNAs.

82.     In 2023, the Minnesota state legislature enacted an appropriation bill 2023

Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42, that sought to extend to

students  free CNA training at the state's colleges, universities, and high schools through the

defendants Minnesota Board of Trustees:

Subd. 42.  Next Generation Nursing Initiative $3,000,000

For transfer to the Board of Trustees of the Minnesota State Colleges and
Universities for HealthForce Minnesota to coordinate and implement the
Next Generation Nursing Assistant Training Program for the recruitment and
training of students to become certified nursing assistants. The program must
use a "free up-front" model for covering the student costs.  This
appropriation may also be used for marketing and outreach across the state
and covering the costs for retraining, retesting and refresher courts.  The
appropriation is available until June 30, 2025.

83.     The enacted appropriation law continues to fund colleges, universities, and

high schools to provide students with free CNA training.

84.     By the terms of the enacted appropriation law, the policy to provide students

with free CNA training will continue to June 30, 2025.

85.     By the terms of the enacted appropriation law, no moneys are to be used

unless programs provide students with free CNA training.

20

86.     The enacted appropriation law also provides for HealthForce Minnesota to participate in the process of providing or ensuring programs provide students with free CNA training.

87.     The enacted appropriation law directs the Minnesota Board of Trustees to ensure CNA training programs are provided or ensure programs provide students with free CNA training.

88.     The defendant Minnesota Board of Trustees provides no mechanism or process to include private entities, such as the Plaintiffs, to appropriate moneys to them to provide students with free CNA training and exams.

89.     The defendant HealthForce Minnesota provides no mechanism or process for private entities, such as the Plaintiffs, to appropriate moneys to them to provide students free CNA training and exams.

90.     The Minnesota Board of Trustees and HealthForce know of the existence of private entities, such as the plaintiffs, who have approved CNA training programs.

91.     In the first round of the Next Generation Nursing Assistant Training program for high school and college students, state funding to provide students with free CNA training was available to some private businesses.

92.     For example, plaintiff Twin Cities Safety LLC, d.b.a., HeartCert, received funding from the first appropriation beginning in February 2022 and used the funding to provide free training to approximately 100 CNA students.  See e.g., Monitoring Report, Exhibit C.

93.     In the second round of funding to the Next Generation Nursing Assistant Training program, governing fiscal year 2023, moneys to provide students free CNA training to HeartCert as a for-profit business were unavailable. In other words, the defendants did not grant HeartCert moneys to participate in the Next Generation Nursing Assistant Training program.

94.     For fiscal year 2023, the defendants used moneys through grant agreements with high schools and colleges, but for one non-profit organization that could be presently identified—LifeCare Medical Center in Roseau, Minnesota—a non-profit organization, to the exclusion of any private for-profit businesses or other non-profit organizations such as plaintiff Numan Vocational.

95.     Knowing of private entities with approved CNA programs, either the Minnesota Board of Trustees or HealthForce or both collaborated or individually determined that plaintiff HealthCert, and similar private businesses (or other non-profit organizations) such as the remaining plaintiffs, were not and are not eligible to receive funding to provide students with free CNA training.

96.     The effect of the Minnesota Board of Trustees or HealthForce or both in providing grant agreements to the exclusion of private for-profit businesses and other non-profit organizations in the second round of funding was immediate. Inquiries to the plaintiffs from potential students asking about free CNA training, once told it was unavailable, those potential students did not enroll with the plaintiffs. The economic impact was devastating and remains devastating.

97.     Plaintiffs have found that potential students seeking CNA training are unwilling to pay for those services when the same training is available for free at either high schools or colleges.

98.     The third round of funding through the enacted appropriation law, 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42, perpetuates the policy through grant agreements to high schools and colleges to the exclusion of the plaintiffs.

99.      The plaintiffs have invested resources including time and money to develop state approved CNA training programs.

## Count 1:  Violation of Sherman Act

100.     Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count 1.

101.     The Plaintiffs believe that Section 1 of the Sherman Act, 15 U.S.C. §§ 1-38, prohibits agreements that unreasonably restrain trade. Section 1 of the Sherman Act is accurately quoted, in part, as follows:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony….

102.     Plaintiffs understand that to establish a violation of Section 1 of the Sherman Act, they must show that: (1) there is an agreement; (2) the agreement is an unreasonable restraint of trade; and (3) there is an effect on interstate commerce.

103.     There is an agreement or partnership between the defendants and Minnesota colleges, universities, and high schools to provide students free CNA training.

104.   Through the agreements, the defendants and the colleges, universities, and high schools are engaged in a conscious commitment to a common scheme to provide students with free CNA training.

105.   The plaintiffs are engaged in providing a state approved CNA training programs. The services are open to the public for a designated competitive monetary fee in accordance with their individual respective business model. The plaintiffs are also in competition with each other.

106.   The defendants' agreements or partnerships to provide students with free CNA training statewide is an unreasonable restraint of trade.

107.   The defendants' agreements or partnerships, restricts competition and decreases the output of the plaintiffs as providers of students as trained CNAs, and, so, is per se illegal and condemned without further examination under Section 1.

108.   The plaintiffs understand that certain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances.

109.   The plaintiffs believe that practices condemned as per se illegal include price fixing.

110.   The Minnesota Board of Trustees and HealthForce are engaged in per se illegal price fixing in violation of Section 1.

111.   Moreover, the agreement or partnership has an effect on interstate commerce.

24

112.    For example, residents of different states take the CNA training and residents of different states benefit from the CNAs who benefitted from the CNA training.

113.    The plaintiffs understand that the state may have some state sovereign immunity from antitrust liability, but only if it meets two conditions.  Here, the plaintiffs believe that the state must first show that  the anti-competitive policy is clearly articulated and affirmatively expressed as state policy, and two, the anti-competitive policy must be 'actively supervised' by the State itself. The plaintiffs contend that these two conditions are not met.

114.    First, the appropriation law, 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42, does not clearly articulate e and affirmatively express a state policy against private for-profit businesses or other non-profit organizations providing CNA training programs. The state's policy is not and does not expressly seek to displace unfettered business freedom in providing CNA training by private for-profit businesses or non-profit organizations such as the plaintiffs.

115.    The underlying scheme is in favor of the predatory pricing against private providers or other non-profits such as the plaintiffs.

116.    But, a state policy that by its scheme eliminates other parties, such as the plaintiffs, to provide CNA training through, for example, predatory pricing, is preempted or contradicted by federal law, including but not limited to 42 CFR § 483.152, and contradicted by the Minnesota Department of Health's continuation of approving applications for Nurse Aide Training Competency Evaluation Programs.

117.    The Minnesota Department of Health webpage continues to welcome such applications:

> MDH recognizes Minnesota has a variety of diverse training programs that are offered throughout the state including private and public.

www.health.state.mn.us/facilities/providers/nursingassistant/docs/faqnatcep.pdf (last visited Dec. 4, 2023).

118.    The state is engaged in two contradictory policies.  On one hand, because federal law requires it, the Minnesota Department of Health continues to approve private companies' applicants, like the plaintiffs, to provide CNA training.  On the other hand, the defendants and the colleges, universities, and high schools are engaging in a predatory pricing scheme which is intended and does cause devastating economic harm to the plaintiffs and other CNA training providers.

119.    Second, the anti-competitive policy here is not 'actively supervised' by the state.

120.    The appropriation law, 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42, mandates students receive free CNA training, to be implemented through the defendants. Through grant agreements with only high schools, colleges, and universities, the law and the actions of the defendants reveal a mandate of what is essentially a price-fixing arrangement.

121.    The defendants do not supervise the economic effects of the state policy against that of the competitive marketplace but have engaged in economic constraints of a competitive marketplace that provides state approved CNA training.

122.    The defendants' actions have harmed the plaintiffs.

26

123.     The plaintiffs seek declaratory and injunctive relief remedies available under the Sherman Act as detailed in the prayer for relief.

**Count 2: Violation of the U.S. Constitution's Equal Protection Clause**

124.     Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count 2.

125.     The plaintiffs bring this suit to challenge 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42 on the ground that it violates the United States Constitution's Equal Protection Clause.  U.S. Const. art. XIV.

126.     To prove a class-of-one claim, plaintiffs must establish that: (1) the government treated the plaintiffs differently from other similarly situated persons; (2) the difference in treatment was intentional; and (3) the difference in treatment was not rationally related to any legitimate government purpose.

127.     The state-approved CNA training provided on Minnesota's college, university and high school campuses is similarly situated to the plaintiffs-provided CNA training off-campus.

128.     But, the state government treats the two classes differently because the challenged provision appropriates money to the Board of Trustees of the Minnesota State Colleges and Universities to provide students free training "to become certified nursing assistants." 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42. The provision thus allows a student to become a certified nursing assistant (CNA) for free by attending a training program run by a Minnesota state college, university, or high school, but not a

27

training program run by a private for-profit business or non-profit organization such as the plaintiffs.

129.   The government's difference of treatment is intentional because 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42 does not allow for-profit businesses or non-profit organization such as the plaintiffs,  to participate in providing students free CNA training, while the same training is provided by the subsidy funding received by the participating state colleges, universities, and high schools.

130.   The difference in treatment was not rationally related to any legitimate government purpose because the plaintiffs, as private for-profit businesses or non-profit organization, such as the plaintiffs, with state approved CNA training programs, provide the same or similar state approved CNA training that the state colleges, universities, and high schools provide.

131.   The plaintiffs are Minnesota for-profit businesses or non-profit organization that provide a training program for a student to become a CNA—the same service that Minnesota will now provide for free.

132.   Because Minnesota provides the same training for free, the plaintiffs, who must charge for their services to cover their costs or to make a profit, are not able to compete.

133.   The challenged provision, with its distinction between public and private provision of substantially the same state-approved program, effectively drives privately provided CNA training programs out of business.

134. The challenged provision's distinction between public and private provision of substantially the same state certified program violates the U.S. Constitution's Equal Protection Clause.

135. The challenged provision's distinction unconstitutionally favors CNA training programs run by a Minnesota state college, university, or high school as opposed to programs run by plaintiffs as private state approved CNA training providers.

136. Moreover, the challenged provision favors public programs so heavily as to up root and force the plaintiffs as small minority owned businesses (as well as non-profit organizations) out of a lucrative market for CNAs because demand is high according to the Monitoring Report (Exhibit C). The challenged provision makes private programs radically non-competitive: students won't pay for training from a private provider when students can receive substantially the same training for free from a state program.

137. The challenged provision approaches the grant of a de facto monopoly on CNA training to Minnesota colleges, universities, and high schools.

138. The plaintiffs have been harmed by the defendants' actions under the unconstitutional law.

139. The defendants' actions under the unconstitutional law cause plaintiffs to lose revenue or payments for services, without which is detrimental to them, because they have no or virtually no paying clients because the students enroll in the free CNA training instead.

140. The plaintiffs seek prospective declaratory and injunctive relief.

**Count 3: Violation of the Minnesota Constitution—General Law Required**

141. Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully

restated in support of the further allegations asserted under Count 3.

142.    The plaintiffs bring this suit to challenge 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42 on the ground that it violates the Minnesota Constitution's prohibition on special laws. Minn. Const. art. XII, § 1.

143.    The challenged provision appropriates money to the Minnesota Board of Trustees of the Minnesota State Colleges and Universities to provide free training for "students to become certified nursing assistants." 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42. The provision thus allows a student to become a certified nursing assistant (CNA) free of charge by attending a training program run by a Minnesota state college, or university, and high schools.

144.    The plaintiffs provide a state approved training program for a student to become a CNA—substantially the same service that the defendants  will now provide for free through agreements with colleges, universities or high schools.

145.    Because the defendants are implementing a policy to provide the same or similar CNA training to students for free, the plaintiffs, who must charge for their services to cover their costs, are not able to compete.

146.    The challenged provision, creating  a distinction between state-approved programs depending upon the entity, it effectively causes devastating economic harm to other private for-profit businesses (or non-profit organizations) that provide CNA training programs, and for some,  driving them out of business.

147.    The challenged provision creating a distinction between state-approved programs depending upon the entity violates Minnesota's Constitution's requirement that

laws be as general as possible: "In all cases when a general law can be made applicable, a special law shall not be enacted except as provided in section 2." Minn. Const. art. XII, § 1.

148.    Minnesota's Constitution requires that laws be as general as possible: "In all cases when a general law can be made applicable, a special law shall not be enacted except as provided in section 2." Minn. Const. art. XII, § 1.

149.    The challenged provision, 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42, is not as general as possible in that it provides funding for only CNA training programs run by a Minnesota state college, university, or high school, but not a training program run other entities such as the plaintiffs. The challenged provision is a special law that favors CNA training programs run by a Minnesota state college or university or high school.

150.    Moreover, the challenged provision favors public programs so heavily as to displace the plaintiffs because the challenged provision makes other non-free CNA training programs radically non-competitive: students under the legislative scheme get CNA training for free if they attend a state college, university, or high school.

151.    The challenged provision grants a de facto monopoly on CNA training to Minnesota colleges, universities, and high schools.

152.    The plaintiffs have been harmed by the defendants' actions under the legally unauthorized special law.

153.    The defendants' actions under the legally unauthorized law causes plaintiffs economic harm because students seeking a CNA training program are unwilling to pay for those services when they can get the training for free.

154.    The plaintiffs seek prospective declaratory and injunctive relief.

## Jury Trial Demand

155.    Plaintiffs demand a jury trial.


## Prayer for Relief

The plaintiffs ask this Court for the following relief against the defendants:

(1)     A declaratory judgment that 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42, violates the Sherman Act, 15 U.S.C. § 1, et seq.;

(2)     A declaratory judgment finding that 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42, violates the Plaintiffs' rights as protected under the Equal Protection Clause;

(3)     A declaratory judgment that 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42 violates Minn. Const. art. XII, § 1's prohibition on special laws;

(4)     A preliminary and permanent injunction barring the defendants from implementing the policy under 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42 to provide  free training to students in certified-nursing-assistant training programs or using the money accordingly;

(5)     An award of the plaintiffs' attorneys' fees, costs of suit, and other litigation expenses under 15 U.S.C. § 15, 42 U.S.C. § 1988, and the Minnesota Equal Access to Judgment Act, Minn. Stat. §§ 15.471–15.473; and

(6)     All other relief the Court deems necessary or appropriate under any law or otherwise within the Court's authority to award.

Dated: December 7, 2023.

/s/Erick G. Kaardal
Erick G. Kaardal, Atty. No. 229647
Mohrman, Kaardal & Erickson, P.A.
150 South 5th Street, Suite 3100
Minneapolis, MN 55402
Telephone:    (612) 341-1074
Email:        kaardal@mklaw.com
*Attorneys for the Plaintiffs*