# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Twin Cities Safety LLC, d.b.a., HeartCert, et al.,

Plaintiffs,

v.

Roger Moe, in official capacity as Chair, Trustee of the Minnesota State Colleges and Universities, or successor thereto, et al.,

Defendants.

Case No: 23-cv-03758-NEB-DJF

**BRIEF IN SUPPORT
OF DEFENDANTS'
MOTION TO DISMISS**

---

## INTRODUCTION

Nine private training companies marshal a provocative (and ultimately spurious) legal theory in this case: that the government must fund private enterprise or risk offending the Sherman Act and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In particular, these training companies contend that a state agency cannot fund public education unless it also makes funds available to them. This theory finds no precedent in the law, for reasons that are self-evident.

The Complaint challenges an action expressly authorized by the Minnesota legislature and implemented by the Minnesota State Colleges and Universities ("Minnesota State"). The action at issue is a May 2023 legislative appropriation that transferred funds to Minnesota State to provide free training to future certified nursing

assistants, known as the Next Gen Initiative, through a branch of Minnesota State, the HealthForce Center of Excellence ("HealthForce"). Plaintiffs allege three causes of action: (1) violation of Section 1 of the Sherman Act; (2) violation of the federal Equal Protection Clause on a class-of-one theory; and (3) violation of a Minnesota Constitution provision prohibiting special laws. Plaintiffs' Complaint should be dismissed in its entirety because it fails to plead any viable claims on its face.

First,[1] Plaintiffs fail to meet the *Twombly* pleading standard for alleging the requisite elements of a Sherman Act claim. *See infra* Argument Sec. II. In addition, Defendants are shielded from antitrust liability by state action immunity. *Id.*

Second, Plaintiffs' equal protection claim is barred by sovereign immunity because the requested relief is neither prospective nor equitable. *See infra* Argument Sec. III. Plaintiffs' equal protection claim also fails on its merits. *Id.*

Third, Plaintiffs' last claim is likewise barred by sovereign immunity. *See infra* Argument Sec. IV. Moreover, appropriations bills are, by nature, special laws to which the state constitutional provision in question does not apply. *Id.* For these reasons, and those that follow, the Complaint must be dismissed in its totality.

---

[1] As an initial matter, this Court should dismiss HealthForce because it is not a cognizable legal entity and cannot be sued separately from Minnesota State. *E.g.*, *Lewis v. Minnesota*, No. 17-CV-5479 (DWF/BRT), 2018 WL 5283927, at *2 (D. Minn. Oct. 5, 2018) (dismissing Hennepin County Attorney's Office as not suable because it is "an operational department of Hennepin County and not a separate legal entity"), *adopted by*, 2018 WL 5283874 (D. Minn. Oct. 24, 2018), *aff'd*, 787 F. App'x 914 (8th Cir. 2019).

**COMPLAINT FACTS[2]**

Plaintiffs are nine private training companies approved by the State of Minnesota ("State") to operate certified nursing assistant ("CNA") training programs. (Compl. ¶¶ 7–15, 36–37, 51–63.) During the COVID-19 pandemic, the State experienced an historic shortage of CNAs "to such an extent it endangered the health and welfare of" Minnesotans. (*Id.* at ¶ 1.)

In response to this crisis, Governor Tim Walz leveraged federal American Rescue Plan Act funds to establish a new program referred to as the Next Generation Nursing Assistant Training for High School and College Students (hereinafter, the "Next Gen Initiative") in December 2021. (*Id.* at ¶ 64.) The Next Gen Initiative was designed to provide Minnesotans CNA training and certification free-of-charge. (*Id.* at ¶ 65.) In September 2022, the Next Gen Initiative received additional funding from a State COVID-19 reserve to continue its objective. (*Id.* at ¶¶ 66–67.)

HealthForce was tasked with staffing and administering the Next Gen Initiative. (Compl. ¶ 68.) HealthForce is a unique statutory entity designated by Minnesota State to address the statewide demand for healthcare workers. (*Id.* at ¶ 33.) Defendant Valerie DeFor ("Ms. DeFor") is HealthForce's Executive Director. (*Id.* at ¶ 34.) HealthForce is not a separate State agency; rather, it is part of Minnesota State. Minn. Stat. § 136F.31.

In the 2022 and 2023 fiscal years, the Minnesota Office of Higher Education

---

[2] These facts are drawn from the Complaint ("Compl"; ECF No. 1) and the materials it cites. Defendants do not admit Plaintiffs' allegations but assume all well-pleaded facts are true for purposes of Fed. R. Civ. P. 12(b)(1) and (6).

("OHE") entered into grant agreements with Minnesota State institutions for the provision of CNA training and certification under the Next Gen Initiative. (Compl. ¶¶ 69, 73, 77, 79.) Defendant Dennis Olson Jr. ("Commissioner Olson") is OHE's Commissioner. (*Id.* at ¶ 32.) Minnesota State "accepted" these grant agreements from OHE. (*Id.* at ¶ 78.)

OHE also made Next Gen Initiative grants to high schools and private entities, including one Plaintiff, Twin Cities Safety LLC, d/b/a HeartCert ("HeartCert"), which received a grant in 2022 to train "about 100 students." (*Id.* at ¶¶ 69–70, 72–73, 80, 91–92.) The Complaint alleges that the other Plaintiffs were not aware grant funding was available and thus did not pursue it. (*Id.* at ¶ 71.) HeartCert sought grant funding again in 2023 but was denied by OHE, which indicated that grant money was no longer being provided to private businesses. (*Id.* at ¶¶ 74, 94.) In all, by mid-February 2023, 1,737 students had become CNAs through the Next Gen Initiative. (*Id.* at ¶ 81.)

During its 2023 session, the Minnesota legislature assumed funding of the Next Gen Initiative via a bill—Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42 (hereinafter "HF 2073")—that appropriated $3 million to the Minnesota State Board of Trustees ("Board") for HealthForce to "coordinate and implement" the Next Gen Initiative. (Compl. ¶ 82.) These funds, which are set to expire in June 2025, have been used to provide free CNA training and certification at Minnesota State's college and universities, as well as high schools. (*Id.* at ¶¶ 83–84.) HF2073 states, in relevant part:

> Subd. 42.
> Next Generation Nursing Initiative
>
> For transfer to the Board of Trustees of the Minnesota State Colleges and Universities for HealthForce Minnesota to coordinate and implement the Next Generation Nursing Assistant Training Program for the recruitment and training of students to become certified nursing assistants. The program must use a "free up-front" model for covering the student costs. This appropriation may also be used for marketing and outreach across the state and covering the cost for retraining, retesting, and refresher courses. This appropriation is *available until June 30, 2025*.
>
> | 2024……………………….. | 3,000,000 |
> | 2025……………………….. | -0- |

2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subd. 42.

Minnesota State determined that private businesses are not needed for the Next Gen Initiative; nor does the bill provide a process for Plaintiffs or other private businesses to access the funds that the Legislature appropriated to Minnesota State. (*Id.* at ¶¶ 88–89, 95.) As a result, Plaintiffs claim they have suffered "devastating" economic loss in the form of lost enrollment. (*Id.* at ¶¶ 96–97.) This lawsuit arises out of the 2023 Next Gen funding appropriated by HF 2073.

Based on these facts, Plaintiffs purport to state claims against HealthForce, Ms. DeFor, Commissioner Olson, and fifteen Trustees of Minnesota State's Board—in their official capacities only—under Section 1 of the Sherman Act, the federal Equal Protection Clause, and the Minnesota Constitution. None may proceed to discovery.

**ARGUMENT**

## I.   LEGAL STANDARDS

### A.     Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage of the litigation, the Court accepts the Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

"Factual allegations must be enough to raise a right to relief above the speculative level" *Twombly*, 550 U.S. at 555. Mere labels and conclusions, and a formulaic recitation of the elements of a cause of action, do not suffice *Id.* at 555, 557. The Court must undertake the "context-specific task" of determining whether Plaintiffs' allegations "nudge" their claims "against *each* defendant 'across the line from conceivable to plausible.'" *Grimmett v. Minn. Dep't of Corr.*, No. CIV. 12-943 JNE/LIB, 2012 WL 6060974, at *2 (D. Minn. Nov. 8, 2012) (emphasis added), *adopted by*, 2012 WL 6057131 (D. Minn. Dec. 6, 2012).

## B.  Rule 12(b)(1)

A party may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1). If subject matter jurisdiction is lacking over a claim, the claim must be dismissed. Fed. R. Civ. P. 12(b)(1), 12(h)(3); *see also Benter v. U.S. Soc. Sec. Admin. Field Office – Bemidji*, No. 14-130, 2014 WL 5307634, at *2 (D. Minn. Oct. 16, 2014) ("Jurisdiction is a threshold issue, and 'judicial economy demands that the issue be decided at the outset' of the case.") (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)). The Court may "dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (internal quotations and citation omitted). Defendants move on the first basis only: the Complaint alone.

## II.  THE SHERMAN ACT CLAIM (COUNT I) IS INADEQUATELY PLEADED AND BARRED BY IMMUNITY

Count I of Plaintiffs' Complaint alleges violation of Section 1 of the Sherman Act. (Compl. ¶¶ 100–23.) Section 1 declares unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1.

To establish a plausible Section 1 claim, Plaintiffs must plead predicate facts demonstrating: (1) the existence of contract, combination, or conspiracy that; (2) unreasonably restrains trade, in a manner that (3) affects interstate commerce.

*TheMLSonline.com, Inc. v. Reg'l Multiple Listing Serv. of Minn., Inc.*, 840 F. Supp. 2d 1174, 1180 (D. Minn. 2012). At the Rule 12 stage, the Complaint fails at the first and third criteria.

### A.    Plaintiffs Have not Pleaded a Sherman Act Conspiracy

As the Supreme Court made clear in *Twombly*, conclusory allegations of a conspiracy do not suffice to state a claim under Section 1 of the Sherman Act. 550 U.S. at 556. Instead, Plaintiffs must plead "direct evidence of an agreement" that is "factually plausible[.]" *Id.* at 564. "Conspiracy allegations are implausible when there exists an 'obvious alternative explanation' for the defendant's conduct that the complaint does not plausibly undermine." *BCBSM, Inc. v. GS Labs, LLC*, No. 22-CV-5113 (ECT/DJF), 2023 WL 2044329, at *15 (D. Minn. Jan. 30, 2023) (quoting *Twombly*, 550 U.S. at 567); *see also McDonough v. Anoka Cnty.*, 799 F.3d 931, 946 (8th Cir. 2015) ("Each Defendant's alleged conduct must be assessed independently to ensure that [plaintiffs] have pleaded sufficient facts regarding that Defendant's impermissible purpose to state a facially plausible claim against that Defendant.").

That Plaintiffs have not met *Twombly*'s bar for pleading a plausible Sherman Act conspiracy here cannot seriously be debated. The Complaint contains but a single conspiracy allegation: "There is an agreement or partnership between the defendants and Minnesota colleges, universities, and high schools to provide students free CNA training." (Compl. ¶ 103.) This allegation is, by definition, purely conclusory. *Twombly*, 550 U.S. at 556–57. Further, it does not suggest that restraint of trade was the more likely

object of Defendants' supposed "conspiracy," which *Twombly* demands.[3] *E.g., Uhr v. Responsible Hospitality Inst., Inc.*, No. 10-CV-4945 (PJS/TNL), 2011 WL 4091866, at *8 (D. Minn. Sept. 14, 2011) (dismissing Sherman Act claim where allegedly conspiratorial actions could equally have been explained by lawful, independent goals) (citation omitted); *BCBSM, Inc.*, 2023 WL 2044329, at *16 (same, where counterclaimant's pleading failed to address "an obvious alternative explanation" other than restraint of trade).

Beyond this integral pleading failure, Plaintiffs also have not adequately alleged each Defendant's participation in the supposed "conspiracy." *Twombly*, 550 U.S. at 565 n. 10 (confirming that a Section 1 complaint alleging "no specific time, place, or person involved in the alleged conspiracies" does not give the notice Rule 8 requires); *accord BCBSM, Inc.*, 2023 WL 2044329, at *16. Commissioner Olson cannot have been a co-conspirator because Plaintiffs do not allege that OHE has (or had) any involvement whatsoever with the funds the legislature appropriated to the Board via HF 2073. That leaves the Trustees and Ms. DeFor, yet as a matter of law, they cannot have conspired with one another for Sherman Act purposes because they all are part of the same entity— Minnesota State. *See Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 882–83 (D. Minn. 2017) (recognizing that intra-enterprise conspiracy claims are meritless) (citing

---

[3] Defendants' objective, as acknowledged by Plaintiffs' own pleading, is to address "a shortage of nurses and in particular, nursing assistants to such an extent it endangered the health and welfare of its citizens." (Compl. ¶ 1.) As explained below in the context of Plaintiffs' equal protection claim, they have failed to negative any of the numerous potential rationales for excluding them from the Next Gen Initiative.

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984)). Count I must be dismissed for this reason alone.

### B.     Plaintiffs have not Adequately Alleged an Interstate Commerce Nexus

Rules 12(b)(1) and 12(b)(6) both apply to the third element (effect on interstate commerce) of a Section 1 claim. *Huelsman v. Civic Ctr. Corp.*, 873 F.2d 1171, 1174 (8th Cir. 1989). Federal courts have jurisdiction over Section 1 claims only when interstate commerce is sufficiently alleged; failure to sufficiently allege an interstate commerce nexus separately impels dismissal under Rule 12(b)(6). *Id.*

Under both Rules, the determining inquiry is whether Plaintiffs' Complaint adequately alleges that Defendants' alleged unlawful conduct either: (1) occurred in interstate commerce (i.e., the "in commerce" test); or (2) substantially affects interstate commerce (i.e., the "effects" test). *Pariser v. Christian Health Care Sys., Inc.*, 816 F.2d 1248, 1252 (8th Cir. 1987); *Heille v. City of St. Paul, Minn.*, 512 F. Supp. 810, 812 (D. Minn. 1981), *aff'd*, 671 F.2d 1134 (8th Cir. 1982). Plaintiffs must "do more than merely identify a relevant local activity and presume an interrelationship with some unspecified aspect of interstate commerce." *Id.* at 1174–75 (citing *McLain v. Real Estate Bd. Of New Orleans, Inc.*, 44 U.S. 232, 242 (1980)); *see also Heille*, 512 F. Supp. at 812 (same), Rather, they must plead the existence of a "critical interstate commerce relationship" and, if their allegations are controverted, Plaintiffs bear "the burden"—at the pleading stage— of establishing "economic facts" sufficient to demonstrate a substantial interstate nexus. *Huelsman*, 573 F.2d at 1175.

The "in commerce" test can be met by showing either that Defendants' conduct is

"actually in interstate commerce" or "though essentially local in nature, is an 'integral part of' and 'essential and inseparable from' an interstate transaction." *Heille*, 512 F. Supp. at 812–13. Under the "effects" test, Plaintiffs must demonstrate that, "as a matter of practical economics," Defendants' conduct "has a substantial effect on interstate commerce." *Pariser*, 816 F.2d at 1253. In situations where the alleged business restraint is entirely local, jurisdiction will lie "if the necessary effect is to stifle or restrain commerce among the states." *Huelsman*, 873 F.2d at 1174. The Court "must look to the activities of the parties rather than the industry as a whole." *Heille*, 512 F. Supp. at 813.

The Complaint is woefully deficient under both tests. Plaintiffs do not try to meet the "in commerce" test, as they allege no facts plausibly suggesting that the Next Gen Initiative constitutes interstate commerce or an interstate transaction. As to the "effects" test, Plaintiffs hypothesize that "residents of different states take the CNA training and residents of different states benefit from the CNAs who benefitted from the CNA training." (Compl. ¶ 112.) Yet as a matter of law, conclusory allegations of this ilk do not establish a substantial effect on interstate commerce.[4] *Huelsman*, 873 F.2d at 1175–76 (describing plaintiffs' allegations of substantial effect on interstate commerce as "mere conclusions," and dismissing Sherman Act claim because plaintiffs "did not come forward with any factual information to support these conclusions"); *accord Laidlaw Waste Sys, Inc. v. City of Fort Smith, Ark.*, 742 F. Supp. 540, 543 (W.D. Ark. 1990)

---

[4] This allegation is also belied by the facts. *See* Compl. Ex. C at 4 (reflecting that "[Next Gen Initiative p]articipants were recruited from across *Minnesota* communities" and graduates "were employed throughout *Minnesota*[.]) (emphasis added).

(dismissing Sherman Act claim where plaintiff failed to allege "to what extent defendant's alleged misconduct affected interstate commerce"); *see also Pariser*, 816 F.2d at 1253 (finding no substantial effect on interstate commerce where hospital provided no services outside Illinois and 98% of patients were Illinois residents); *Diversified Brokerage Servs., Inc. v. Greater Des Moines Bd. of Realtors*, 521 F.2d 1343, 1346 (8th Cir. 1975) ("[M]ere movement of individuals from one state to another in order to utilize particular services does not transform those services into interstate services within the meaning of the Sherman Act."); *Adams v. Davis Cnty.*, 30 F. Supp. 3d 1267, 1277 (D. Utah 2014) (dismissing Sherman Act claim lacking facts showing a "not insubstantial effect" on interstate commerce).

Accordingly, because the Complaint does not contain facts plausibly establishing any cognizable nexus between the Next Gen Initiative and interstate commerce, Count I must be dismissed under Rules 12(b)(1) and (6).

## C. Defendants are Immune from Suit under the Sherman Act

The doctrine of state action immunity was first articulated in *Parker v. Brown*, 317 U.S. 341 (1943). There, the Supreme Court held that antitrust laws were not intended to apply to states acting in their capacities as sovereigns. *Id*. at 352. State action immunity protects state actors from antitrust liability under the Sherman Act. *Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 913 (8th Cir. 1997). Since *Parker*, the Supreme Court has subdivided this doctrine into three categories, two of which apply

here: (1) *ipso facto* immunity and (2) *Hallie*[5] immunity. *See Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017).

### 1. *Ipso facto* **immunity**

Under the first approach, once it is determined that alleged anticompetitive conduct is "States acting in their sovereign capacity," the inquiry ends, and the conduct is shielded by state action immunity. *N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 495 (2015). The Supreme Court has expressly recognized state legislation as an act of sovereign power that enjoys *ipso facto* immunity. *Grand River Enters. Six Nations, Ltd. v. Beebe*, 574 F.3d 929, 940 (8th Cir. 2009) (citing *Hoover v. Ronwin*, 466 U.S. 558, 567–68 (1984)) ("[W]hen a state legislature adopts legislation, its actions constitute those of the State, and *ipso facto* are exempt from the operation of the antitrust laws"). Unquestionably, then, HF 2073 is *ipso facto* immune from liability under the Sherman Act.

Beyond funding the Next Gen Initiative, HF 2073 directs HealthForce to "coordinate and implement" the program using a "free-up-front" model for covering student costs. (Compl. ¶ 82.) In carrying out this directive, Defendants are likewise cloaked with *ipso facto* state action immunity under the Sherman Act. *Parker*, 317 U.S. at 350–51 (holding California raisin marketing program enacted by the state legislature exempt from Sherman Act challenge because the program "derived its authority from the legislative command of the state"); *accord Scott v. City of Sioux City, Iowa*, 736 F.2d

---

[5] *Hallie v. City of Eau Claire*, 471 U.S. 34 (1985).

1207, 1210 (8th Cir. 1984); *see also Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671 (5th Cir. 2020) (Texas statute banning liquor or wine discounts was duly enacted by the legislature and *ipso facto* exempt from antitrust laws); *PTI, Inc. v. Philip Morris, Inc.*, 100 F.Supp.2d 1179, 1196 (C.D. Cal. 2000) (California's statutory scheme to implement master settlement agreement for tobacco use, while anticompetitive, was nonetheless a direct legislative activity protected by state action immunity). Defendants are thus *ipso facto* immune from Sherman Act liability.

## 2.    *Hallie* immunity

To the extent Defendants are not shielded by *ipso facto* state action immunity, they nevertheless enjoy immunity under the *Hallie* test. As State agencies, OHE and Minnesota State (as well as HealthForce within it) are arms of the State. *See Breaker v. Bemidji State Univ.*, 899 N.W.2d 515, 520 (Minn. Ct. App. 2017); Minn. Stat. §§ 136F.06 (Minnesota State); 136A.01 (OHE); 136F.31 (HealthForce). No Defendant is "controlled by active market participants, who possess singularly strong private interests[.]" *Cf. N. Carolina State Bd. of Dental Examiners*, 574 U.S. at 496 (2015); *see also Hallie*, 471 U.S. at 46, n. 10 (observing that state agencies are not driven by private interests).

*Hallie* imposes one additional consideration in assessing whether state action immunity applies to actors like municipalities and "prototypical state agencies." *Hallie*, 471 U.S. 34, 45–46, n. 10 (1985). To pass the *Hallie* test, Defendants need show only that their allegedly anticompetitive conduct is "in furtherance or implementation of clearly articulated and affirmatively expressed state policy." *Carlson T.V. v. City of Marble*, 612

F. Supp. 669, 671 (D. Minn. 1985). This policy need not be patently suppressive of competition. *Hallie*, 471 U.S. at 43; *accord Cent. Iowa Refuse Sys., Inc. v. Des Moines Metro. Solid Waste Agency*, 715 F.2d 419, 424 (8th Cir. 1983) (concluding that for immunity to apply, there "need not be a legislative directive to engage in anticompetitive actions, nor even a detailed authorization"). Rather, it is enough "if suppression of competition is the 'foreseeable result' of what the statute authorizes[.]" *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 373 (1991) (concluding that city's suppression of competition in the billboard market was the foreseeable result of a state statute authorizing municipalities to adopt zoning ordinances regulating the construction of buildings and other structures); *see also Carlson*, 612 F. Supp. at 671 (holding that city's operation of its own cable system was immune under *Hallie* because anticompetitive behavior was a foreseeable result of statutes authorizing city to operate its own cable system); *Turner v. Va. Dep't of Med. Assistance Servs.*, 230 F. Supp. 3d 498, 505 (W.D. Va. 2017) (applying *Hallie* to a "prototypical state agency").

Here, the State has legitimate interests in the health and welfare of Minnesotans and in maintaining enough skilled workers to meet the burgeoning demands of our aging population. *See Danker*, 569 F. Supp. 3d at 880; *Algarin v. NYC Health + Hosps. Corp.*, No. 1:22-CV-8340 (JLR), 2023 WL 4157164, at *13 (S.D.N.Y. June 23, 2023) (easing staffing shortage in critical industries such as healthcare is a bona fide state interest). HF 2073 furthers these interests by appropriating funding to Minnesota State to continue the Next Gen Initiative. Compl. ¶¶ 1, 82, *see infra* Sec. III.B.2 (in-depth discussion of the state's policy behind and rationale for funding the Next Gen Initiative). That free CNA

training and certification would be provided at Minnesota's public colleges and universities is a foreseeable consequence of the legislature's directive that HealthForce "coordinate and implement" the Next Gen Initiative.[6] It necessarily follows that *Hallie* immunity covers Defendants (even if *ipso factor* immunity does not).

In sum, Plaintiffs have not pleaded a colorable claim under Section 1 of the Sherman Act. Had they, state-action immunity bars that claim as a matter of settled law. Count I must therefore be dismissed.

## III. THE EQUAL PROTECTION CLAIM (COUNT II) IS LIKEWISE BARRED BY IMMUNITY AND PLEADED INADEQUATELY

The Eleventh Amendment to the United States Constitution forecloses Plaintiffs' equal protection claim (Count II), which they pursue on a "class-of-one" theory. Despite their nifty pleading, the relief Plaintiffs seek is entirely financial and retroactive (i.e., precisely what the Eleventh Amendment proscribes): an order compelling Defendants to pay them public grant money that was appropriated to Minnesota State in May 2023. Sovereign immunity notwithstanding, it remains that Plaintiffs state no facially plausible Equal Protection Clause violation. Beyond conclusory assertions, the Complaint pleads no facts showing "similar situatedness" between Plaintiffs and public schools. Nor have Plaintiffs met their burden of pleading facts negating every conceivable basis that might

---

[6] Taken to its logical conclusion, Plaintiffs' Sherman Act theory of liability would obliterate Minnesota's public education system. Public elementary, secondary, and postsecondary schools are undoubtedly attractive to parents and students because they are free or less costly than private options. But the ripple effects would not stop there. What about municipal fitness centers that are more affordable to citizens than private athletic (Footnote Continued on Next Page)

support the Next Gen Initiative.

### A.    The Relief Plaintiffs Seek is Neither Prospective Nor Equitable

For their equal protection claim, Plaintiffs sue Defendants solely in their official capacities, purportedly seeking prospective equitable relief only. "[A] suit against a state official in his or her official capacity is no different from a suit against the State itself." *Minnesota State Coll. Student Ass'n, Inc. v. Cowles*, 620 F. Supp. 3d 835, 850 (D. Minn. 2022) (quotation marks omitted). The Eleventh Amendment normally bars claims for damages against state employees in their official capacities, because "a suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."[7] *Cowles*, at 620 F. Supp. 3d at 850 (quotation marks omitted).

The *Ex parte Young* doctrine is an exception to the general rule of sovereign immunity that allows a private party to "sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *Id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)). It "rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for

---

(Footnote Continued From Previous Page)
clubs? It cannot be the law that the government is required to ensure private businesses are able to provide public services on equally competitive footing.

[7] Eleventh Amendment immunity undoubtedly extends to each Defendant. *See Cowles*, 620 F. Supp. 3d at 850 (applying sovereign immunity to Board trustees sued in their official capacities); *Carlson v. U.S. Dep't of Educ.*, No. CIV. 12-645 JNE/JJK, 2012 WL 4475300, at *6 (D. Minn. Aug. 9, 2012) (OHE is a state department created under Minn. Stat. § 136A.01 and enjoys sovereign immunity), *adopted by*, 2012 WL 4328936 (D. Minn. Sept. 20, 2012); *Simes v. Ark. Jud. Discipline & Disability Comm'n*, No. 4:10CV01047 JFB, 2012 WL 4469264, at *9 (E.D. Ark. Sept. 27, 2012) (commissions are covered by sovereign immunity), *aff'd*, 734 F.3d 830 (8th Cir. 2013).

sovereign-immunity purposes." *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131 (8th Cir. 2019). To determine if *Ex parte Young* applies, courts "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). In short, *Ex parte Young* applies when—and only when—a party seeks injunctive (as opposed to monetary) relief that is prospective (rather than retroactive).

The Complaint fails both requirements. First, while the relief Plaintiffs pray for is couched in declaratory and injunctive terms, what they really seek is an award of grant money from the State coffers. *E.g.,* Compl. ¶ 76 (upbraiding OHE for not giving Plaintiffs "grant agreements to provide CNA programs and exams for their student fees"). Put slightly differently, Plaintiffs ask the Court to force Defendants to contract with them for the provision of free CNA training and certification. *Cf. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) ("The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading."). As Judge Tostrud recently concluded under analogous facts, "[t]here is nothing in the mix with respect to this claim for relief except money." *Cowles*, 620 F. Supp. 3d at 852 (holding that *Ex parte Young* did not apply to student organization's claim seeking to compel the Board to collect and distribute student fees); *see also Council 31 of AFSCME v. Quinn*, 680 F.3d 875 (7th Cir. 2012) (same, where employees sought an injunction to preclude state officials from enforcing pay freeze); *Rasche v. Lane*, 150 F. Supp. 3d 934, 943 (N.D. Ill. 2015) (determining that lottery winners' claims seeking declaration of

entitlement to full winnings and injunctive relief to prevent dissipation of lottery funds was effectively monetary "regardless of their labeling"); *Aiello v. Collier*, No. 2:22-CV-00018, 2023 WL 2733391, at *5 (S.D. Tex. Mar. 31, 2023) (same, plaintiff's requested "injunctive relief" seeking "compensation or a value for labor performed" is "actually a request for monetary damages [to be] paid from the state treasury").

Nor is the relief Plaintiffs seek prospective in nature. The $3 million has already been appropriated to Minnesota State for the Next Gen Initiative. (Compl. ¶ 77.) In other words, there is no "ongoing" violation to enjoin. *See Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004) (plaintiffs' seeking refunds of monies collected by the state was retroactive); *Jackson v. Sawmill Co., Inc.*, 580 F.2d 302, 309–10 (8th Cir. 1978) (declining to apply *Ex parte Young* exception to claim seeking to declare appropriation an unconstitutional impairment of entitlement to contract); *see also Abbey v. Rowland*, 359 F. Supp. 2d 94, 101–02 (D. Conn. 2005) (same, where plaintiffs sought an injunction restoring a budget allocation which, if granted, would effectively divest state of "its sovereign authority over its resources"); *KM Enters., Inc. v. McDonald*, No. 11-cv-5098, 2012 WL 4472010, at *8–9 (E.D.N.Y. Sept. 25, 2012) (same, where business challenged state's "decision to use its competitors product" for a project). All to say, the Eleventh Amendment bars Plaintiffs' equal protection claims.

## B.    The Equal Protection Claim Fails on the Merits

Eleventh Amendment immunity notwithstanding, the Complaint independently falls short of stating a plausible Equal Protection Clause violation. Plaintiffs tacitly concede they are not members of a protected class. Instead, Plaintiffs advance their equal

protection claim under a class-of-one theory.

To plead a class-of-one equal protection claim, Plaintiffs must allege facts establishing that Defendants: (1) "intentionally treated [them] differently from others who are similarly situated"; and (2) "no rational basis existed for the difference in treatment." *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1129 (8th Cir. 2016) (citing *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011)). Plaintiffs have made neither showing.

### 1. Plaintiffs are not similarly situated to Minnesota State's colleges and universities

Start with similar situatedness: "the first step is to examine whether the plaintiff has demonstrated that it was treated differently than others who were similarly situated." *Madsen v. City of Lincoln*, 574 F. Supp. 3d 683, 696 (D. Neb. 2021) (quotation marks omitted) (citing *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018)). "To be similarly situated for purposes of a class-of-one equal-protection claim," the persons or entities alleged to have been treated more favorably "must be identical or directly comparable to [Plaintiffs] *in all material respects*." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis added). The Complaint must provide "a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Higgins*, 813 F.3d 1124 at 1129–30; *see also Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (noting that when plaintiff is not a member of any protected class, it must show "an extremely high degree of similarity") (internal citation and quotation marks omitted). The "similarly

situated" element is critical to a class-of-one claim to avoid "constitutionaliz[ing] all tort law." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004).

Here, Plaintiffs—private training businesses—have not pleaded sufficient facts to demonstrate how they are similarly situated in all material respects to Minnesota State's public colleges and universities. The Complaint just says they are, in conclusory fashion (Compl. ¶127), which "is not enough." *Robbins*, 794 F.3d at 996 (8th Cir. 2015). Even if it were, private for-profit and publicly-funded entities are generally not similarly situated for equal protection purposes. *E.g., Perfect Puppy, Inc. v. City of East Providence*, 98 F. Supp. 3d 408, 418–19 (D.R.I. 2015) (noting that "on the most basic level," for-profit and non-profit businesses "are dissimilar"); *accord Just Puppies, Inc. v. Frosh*, 565 F. Supp. 3d 665, 731–32 (D. Md. 2021) (same); *Professional Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F. Supp. 2d 575, 591–92 (E.D. Pa. 2010) (same); *see generally Carter v. Arkansas*, 392 F.3d 965, 969 (8th Cir. 2004) (public school employees and state employees were not similarly situated in lawsuit challenging employer contribution amounts to health insurance premiums). Count II fails on this basis alone.

### 2. The Complaint does not show that Defendants acted irrationally

In equal protection challenges, the Court's inquiry ends "[w]here there are plausible reasons for the legislature's action." *Danker v. City of Council Bluffs, Iowa*, 569 F. Supp. 3d 866, 879 (S.D. Iowa 2021), *aff'd*, 53 F.4th 420 (8th Cir. 2022) (internal citations omitted). A law's "rational relation to a state interest need only be conceivable, and supporting empirical evidence is unnecessary." *Birchansky v. Clabaugh*, 955 F.3d 751, 757 (8th Cir. 2020) (citation omitted). The actual motivation behind a law is

irrelevant; indeed, "the absence of legislative facts explaining [a] distinction on the record has no significance in rational-basis analysis." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (cleaned up).

Distinctions like that which underpins Plaintiffs' equal protection claim bear a strong presumption of validity, *see Lyng v. Auto. Workers*, 485 U.S. 360, 370 (1988), and parties attacking such a distinction "have the burden to negative every conceivable basis which might support it." *F.C.C.*, 508 U.S. at 315 (internal quotation marks omitted). This is a tall order because the Fourteenth Amendment does not demand exactness:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.

*Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (cleaned up); *see also Romer v. Evans*, 517 U.S. 620, 632 (1996) ("In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale seems tenuous.").

Here, Plaintiffs acknowledge that the Next Gen Initiative was needed to rectify "a shortage of nurses and in particular, nursing assistants to such an extent it endangered the health and welfare of its citizens." (Compl. ¶ 1.) HF 2073 addressed this need by appropriating $3 million to Minnesota State and directing HealthForce to coordinate and implement the Next Gen Initiative. (*Id.* at ¶ 82.) As HF 2073's sponsor stated on the

Minnesota House floor:

> The other part of this bill addresses something that is unique, and that is a worker shortage, a historic worker shortage. We need skilled workers. To get them, we are going to have to have individuals of all ages go back to school to get an employable skill set. And I'd argue further that this will also allow high school students to take college credits and not acquire debt and they can graduate with an employable skill set at age 18.[8]

Undoubtedly, "[h]ealth, safety, and public welfare are legitimate state interests." *Danker*, 569 F. Supp. 3d at 880. So is ensuring that a critical industry has enough skilled workers. *See Algarin*, 2023 WL 4157164, at *13 (state rule mandating COVID-19 vaccinations is rationally related to the state's interest in reducing the risk of staffing shortages in the healthcare industry). The Complaint thus pleads the existence of a rational basis for the Next Gen Initiative, which is fatal to Plaintiffs' class-of-one equal protection claim.

Were more necessary, there are myriad possible rational bases for implementing the Next Gen Initiative without Plaintiffs. Perhaps Defendants determined that Minnesota State's colleges and universities have capacity to fulfill the legislature's mandate without the use of private partners. Or maybe Defendants opted to implement the Next Gen Initiative solely in the public arena because it is easier to administer the program and manage the use of taxpayer funds that way. The Complaint does nothing to negate these

---

[8] *See* https://www.house.mn.gov/hjvid/93/896953, at timestamp 30:10 (last accessed January 11, 2024). The Court may take judicial notice of this legislative history without converting Defendants' motion to a motion for summary judgment. *E.g., Goe v. Zucker*, 43 F.4th 19, 28–29 (2d Cir. 2022).

conceivable bases—let alone to show it was wholly irrational for Defendants to exclude them from the Next Gen Initiative—which further dooms their equal protection claim. *E.g., In re: City of Detroit,* 841 F.3d 684, 701–02 (6th Cir. 2006) (rejecting class-of-one claim where complaint "include[d] no fact rebutting the likely non-discriminatory reasons" for treating "residential and commercial customers differently"). All Plaintiffs say is that their exclusion was irrational because they too provide CNA training and certification. (Compl. ¶ 130). More is required to infer an equal protection violation. *See Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202, 1209–10 (M.D. Fla. 2021) ("Federal courts cannot strike down legislative actions simply because judges might think up more productive or practical solutions.").

At bottom, Plaintiffs' equal protection claim is both barred by sovereign immunity and fails irrevocably on the merits.[9] Therefore, Count II must also be dismissed.

## IV.    COUNT III IS LIKEWISE BARRED BY IMMUNITY AND SPECIOUS

Finally, for Count III, Plaintiffs seek a judgment declaring that HF 2073 violates a provision of the Minnesota Constitution, Article XII, Section 1, which states in relevant part that:

> In all cases when a general law can be made applicable, a special law shall not be enacted except as provided in section 2. Whether a general law could have been made applicable in any case shall be judicially determined

---

[9] The Complaint fails to state an equal protection claim against Commissioner Olson for an additional reason: Plaintiffs have not alleged that he has any role whatsoever in denying them access to the funds that the legislature appropriated to the Board. *See 281 Care Committee v. Arneson*, 638 F.3d 621, 632–33 (8th Cir. 2011) (recognizing that the *Ex parte Young* exception applies only to officials with a plausible connection to challenged action).

without regard to any legislative assertion on that subject.

Minn. Const. Art. 12, Sec. 1.

The Court lacks subject matter jurisdiction over Count III by operation of the Eleventh Amendment, however. The State has not consented to federal jurisdiction for claims arising under the Minnesota Constitution. *Richards v. Dayton*, No. 13-3029, 2015 WL 1522199, at \*33–34 (D. Minn. Jan. 30, 2015), *adopted sub nom. by* 2015 WL 1522237 (D. Minn. Mar. 30, 2015).

Were sovereign immunity not an absolute bar, Count III is also specious. Appropriations bills are, by nature, special laws to which Section 1 of Article XII does not apply. *Dennison v. State*, 11 N.W.2d 151, 154 (1943) ("That the appropriation of moneys out of the state treasury could not be provided for by general laws is a proposition that requires no argument."). In *Dennison*, the Minnesota Supreme Court upheld a legislative appropriation to pay highway accident victims for injuries sustained from driving into an unrepaired sinkhole. *Id*. As the *Dennison* court observed: "the language of the constitution [against special laws] was never intended to apply to such a case" because "[i]f it did, the legislature could never appropriate money to pay a particular claim without passing a general law paying every other claim." *Id*. at 154. Dismissal of Count III is warranted for these reasons.

## CONCLUSION

During and since the pandemic, the State has fulfilled a policy priority to mitigate a severe workforce deficit in long-term care facilities. The Next Gen Initiative's "free up front" model has proven efficacious in attracting new talents to nursing assistant careers.

The State's action in funding Minnesota State to continue its free CNA training is akin to funding public K-12 schools and universities to serve an essential governmental role in promoting health, education and public welfare. The State's chosen measure does not need to be perfect and will be upheld by the Court as long as it meets the rational basis test. Here, as illustrated above, it has.

For all the foregoing reasons, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety.


Dated:  January 17, 2024                    Respectfully submitted,

                                            KEITH ELLISON
                                            Attorney General
                                            State of Minnesota


                                            s/ **Kathleen Reitz**
                                            JEFFREY TIMMERMAN
                                            Assistant Attorney General
                                            Atty. Reg. No. 0352561
                                            KATHLEEN REITZ
                                            Assistant Attorney General
                                            Atty. Reg. No. 0399386

                                            445 Minnesota Street, Suite 1400
                                            St. Paul, MN 55101-2131
                                            (651) 583-7660 (Voice)
                                            (651) 282-5832 (Fax)
                                            Jeffrey.Timmerman@ag.state.mn.us
                                            Kathleen.Reitz@ag.state.mn.us

                                            ATTORNEYS FOR DEFENDANTS