## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| TWIN CITIES SAFETY LLC, doing business as HEARTCERT, ET AL., | Case No. 23-CV-3758(NEB/DJF) |
| Plaintiffs, | |
| v. | ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| ROGER MOE in his official capacity as Chair of the Board of Trustees and Trustee of the Minnesota State Colleges and Universities, or his successor, ET AL., | |
| Defendants. | |

Plaintiffs are private providers of fee-based state-certified nursing assistant ("CNA") programs. In 2023, the Minnesota legislature set up public educational institutions to provide free CNA programs. It transferred $3 million to the Board of the Minnesota State Colleges and Universities and HealthForce Center of Excellence to provide free CNA programs though its public educational system. 2023 Minn. Sess. Law Serv. ch. 41 ("H.F. 2073") art. 1, § 2, subdiv. 42. Plaintiffs brought this action for declaratory and injunctive relief over H.F. 2073, asserting that they "have no competitive footing against the state providing certified nursing assistant programs for free to students." (ECF No. 1 ("Compl.") ¶ 1.) They argue that by implementing H.F. 2073, Defendants violate the Sherman Act, the United States Constitution, and the Minnesota Constitution.

Plaintiffs move for a preliminary injunction, asking the Court to prevent Defendants from providing free CNA training to students. Conversely, Defendants move to dismiss. For the reasons below, Defendants' motion to dismiss (ECF No. 11) is granted and Plaintiffs' motion for a preliminary injunction (ECF No. 17) is denied as moot.

## BACKGROUND[1]

To become a CNA, an applicant must meet federal and state training requirements, including completing 75 hours of training from a state-approved CNA training program and passing the Minnesota CNA competency examination. (Compl. ¶¶ 38–50.) CNA training providers must comply with federal and state program requirements and be approved by the state. (*Id.* ¶¶ 51–60.) Plaintiffs have completed these requirements, and they currently offer CNA training programs in Minnesota. (*Id.* ¶¶ 61–62.) They charge between $750 and $1,500 for CNA training. (*Id.* ¶ 63.)

During the COVID-19 pandemic, Minnesota experienced a shortage of CNAs "to such an extent it endangered the health and welfare of its citizens." (*Id.* ¶ 1.) Through an initiative called "Next Generation Nursing Assistant Training for High School and College Students," Minnesota used federal COVID funds to step in. (*Id.* ¶ 64.) The Next Generation Initiative provided funding for CNA programs to private entities like Plaintiffs, as well as colleges and high schools. (*Id.* ($3.4 million).) The Next Generation

---

[1] The Court draws the background from the complaint, accepting as true all factual allegations in the complaint and drawing all reasonable inferences for the nonmovant. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

Initiative covers all costs for CNA training, including tuition, books, materials, scrubs, and the certification examination, so students receive the program and examination for free. (*Id.* ¶ 65.)

In 2022, a second round of federal funding of over $2.4 million was approved for the Next Generation Initiative to provide students with CNA training and examinations at no cost. (*Id.* ¶¶ 66–67.) As part of the initiative, the Minnesota Office of Higher Education ("OHE") directed the Minnesota State Colleges and Universities' ("MnSCU") Board of Trustees[2] to provide free CNA programs throughout its statewide programs. MnSCU designated a statutory entity—Minnesota HealthForce Center of Excellence[3] ("HealthForce")—to staff and administer this program. (*Id.* ¶ 68.)

---

[2] The Board of Trustees of MnSCU is the governing body of Minnesota's system of state colleges and universities. (Compl. ¶ 16.) MnSCU's Board of Trustees is allegedly "charged with oversight of the system and has responsibility for system planning, academic programs, fiscal management, personnel, admission requirements, tuition and fees, and rules and regulations." (*Id.* ¶ 31.)

[3] HealthForce is alleged to be "a collaborative partnership of education, industry, and community that was created to increase the number and expand the diversity of healthcare workers; to integrate health science education practice and research; and to build capacity for education and industry to collaborate to enhance patient care." (Compl. ¶ 33); *see* Minn. Stat. § 136F.31 (MnSCU Board's designation of centers of excellence and center selection criteria). At the hearing, defense counsel confirmed that HealthForce and other centers of excellence fall within MnSCU, similar to academic departments or student health services. *See generally* Minn. State Centers of Excellence, https://www.minnstate.edu/coe/index.html, https://perma.cc/727R-L9J2 (identifying energy, engineering, HealthForce, IT, and transportation centers of excellence, among others).

Under the Next Generation Initiative, the OHE provided a grant to at least one plaintiff (HealthCert) for about 100 students for CNA training for the 2022 fiscal year. (*Id.* ¶¶ 70, 92.) For the 2023 fiscal year, the OHE refused to provide grants to private entities for CNA training. (*Id.* ¶ 74; *see id.* ¶¶ 73–74, 76.) The public entities received grants for both years. (*Id.* ¶¶ 77–80.)

In 2023, the Minnesota legislature chose to continue the initiative with state funds. It enacted appropriation bill H.F. 2073, which allocated $3 million to free CNA training at public colleges, universities, and high schools, but excluded private entities like Plaintiffs. (*Id.* ¶ 82.) The relevant part of H.F. 2073 reads as follows:

Subd. 42. Next Generation Nursing Initiative $3,000,000

For transfer to the Board of Trustees of the Minnesota State Colleges and Universities for HealthForce Minnesota to coordinate and implement the Next Generation Nursing Assistant Training Program for the recruitment and training of students to become certified nursing assistants. The program must use a "free up-front" model for covering the student costs. This appropriation may also be used for marketing and outreach across the state and covering the cost for retraining, retesting, and refresher courses. This appropriation is available until June 30, 2025.

(*Id.* ¶ 82 (citing 2023 Minn. Sess. Law Serv. ch. 41 (H.F. 2073) art. 1, § 2, subdiv. 42).)

HealthForce and MnSCU's Board of Trustees participate in the process of distributing the funding for free CNA training, but—to the crux of this action—their process does not include private entities, thus excluding private entities from the program. (*Id* ¶¶ 86–89.)

Plaintiffs contend that their exclusion from these grants has had a devastating economic impact on their businesses because students chose free CNA training with state schools rather than paying for training with private businesses. (*Id.* ¶¶ 96–97.)

Plaintiffs sue MnSCU trustees, HealthForce's executive director Valerie DeFor and OHE Commissioner Dennis Olson, all in their official capacities, and HealthForce, asserting that their actions under H.F. 2073 violated (1) Section 1 of the Sherman Act, (2) the Equal Protection Clause of the United States Constitution, and (3) the Minnesota Constitution's prohibition on special laws. They seek to enjoin Defendants from providing students with free CNA training. Defendants move to dismiss the claims, and Plaintiffs move for a preliminary injunction. As discussed below, the Court grants Defendants' motion, which moots Plaintiffs' motion.

## ANALYSIS

### I.     Legal Standard

Defendants move to dismiss the complaint based on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" when the plaintiff pleads factual content that allows the Court to draw the reasonable inference

that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(b)(1), if the Court determines that it lacks subject-matter jurisdiction over an action, it must dismiss the action. *Bueford v. Resol. Tr. Corp.*, 991 F.2d 481, 485 (8th Cir. 1993). When deciding a Rule 12(b)(1) jurisdictional challenge, courts "must distinguish between a 'facial attack' and a 'factual attack.'" *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Defendants bring a facial attack to the Court's jurisdiction. (ECF No. 13 at 7.) Under a facial attack, the Court limits itself to the face of the pleadings, and the non-moving party receives the same protections it would defending a motion to dismiss under Rule 12(b)(6). *Carlsen*, 833 F.3d at 908.

## II.    Count I: Sherman Act Claim

Defendants move to dismiss Plaintiffs' Sherman Act unreasonable-restraint-of-trade claim under Rules 12(b)(1) and (6). Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 1. To establish a Section 1 claim, Plaintiffs must show: "(1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; and (3) that the restraint

affected interstate commerce." *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 768 (D. Minn. 2020) (citation omitted).

### A.    *Interstate Commerce Nexus*

Defendants contend that the Court lacks jurisdiction under Rule 12(b)(1) because Plaintiffs fail to allege the third element: an interstate commerce nexus. The Sherman Act's jurisdictional requirement "may be satisfied under either the 'in commerce' or the 'effect on commerce' theory." *McLain v. Real Est. Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980) (citation omitted). Plaintiffs' theory alleges, at least generally, a substantial effect on interstate commerce. So the question is "whether 'as a matter of practical economics,' the action had a substantial effect on interstate commerce." *Pariser v. Christian Health Care Sys., Inc.*, 816 F.2d 1248, 1253 (8th Cir. 1987) (citation omitted).

Plaintiffs argue that they meet this nexus requirement because other states accept Minnesota CNA certification through processes of reciprocity. But the complaint includes no such allegations. It only vaguely alleges that "the agreement or partnership has an effect on interstate commerce" because "residents of different states take the CNA training and residents of different states benefit from the CNAs who benefitted from the CNA training."[4] (Compl. ¶¶ 111–12.) "[T]he mere movement of individuals from one

---

[4] Documents attached to the complaint suggest otherwise. (*See* ECF No. 1-3 at 3 (reporting that "[p]articipants were recruited from across Minnesota communities" and graduates "were employed throughout Minnesota").)

state to another in order to utilize particular services does not transform those services into interstate services within the meaning of the Sherman Act." *Diversified Brokerage Servs., Inc. v. Greater Des Moines Bd. of Realtors*, 521 F.2d 1343, 1346 (8th Cir. 1975). Because the complaint contains no plausible allegations that Defendants' conduct substantially affected interstate commerce, the Court lacks jurisdiction over the Sherman Act claim.

### B.   State-Action Immunity

Even if Plaintiffs were to amend the complaint to correct the jurisdictional deficiency and plausibly allege a Section 1 claim, Defendants are immune from suit on this claim.[5] State-action immunity bars antitrust liability under the Sherman Act when the state "has the authority to regulate and to suppress competition." *Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 913 (8th Cir. 1997) (citation omitted). Given the values of free enterprise and economic competition embodied in federal antitrust laws, state-action immunity is disfavored. *N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 504 (2015).

Defendants rely on two state-action immunity principles: *ipso facto* immunity under *Parker v. Brown*, 317 U.S. 341 (1943), and immunity under *Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985).

---

[5] The Court need not address the parties' Rule 12(b)(6) arguments because (a) it has no jurisdiction over the Sherman Act claim, and (b) immunity bars it all the same.

8

1.     Parker *immunity*

The Sherman Act was not intended to "restrain a state or its officers or agents from activities *directed by its legislature*." *Parker*, 317 U.S. at 350–51 (emphasis added). "An entity may not invoke *Parker* immunity unless the actions in question are an exercise of the State's sovereign power." *N. Carolina State Bd. of Dental Examiners*, 574 U.S. at 504. Thus, when the alleged anticompetitive conduct is "States [] acting in their sovereign capacity," the inquiry ends, and the conduct is shielded by state-action immunity. *Id.* at 503. "State legislation . . . will satisfy this standard, and '*ipso facto* [is] exempt from the operation of the antitrust laws'" because such legislation is "an undoubted exercise of state sovereign authority." *Id.* (citation omitted); *see Grand River Enters. Six Nations, Ltd. v. Bebee*, 574 F.3d 929, 940 (8th Cir. 2009) ("[W]hen a state legislature adopts legislation, its actions constitute those of the State, . . . and *ipso facto* [is] exempt from the operation of the antitrust laws." (citation omitted)).

*Parker* immunity applies here because the complaint is based on state legislative action: "Plaintiffs seek declaratory and injunctive relief regarding the Minnesota legislative statutory scheme found under [H.F. 2073]." (Compl. ¶ 1.) The complaint elaborates on the purpose of H.F. 2073, explaining that "the Minnesota state legislature enacted an appropriation bill . . . that sought to extend to students free CNA training at the state's colleges, universities, and high schools through the defendants Minnesota Board of Trustees." (*Id.* ¶ 82.) Count I asserts that H.F. 2073 "*mandates* students receive

free CNA training, *to be implemented through the defendants*. Through grant agreements with only high schools, colleges, and universities, *the law* and the actions of the defendants *reveal a mandate* of what is essentially a price-fixing arrangement." (*Id.* ¶ 120 (emphases added).) According to Plaintiffs, the OHE, MnSCU, HealthForce, and the individual defendants—who are sued solely in their official capacities—allegedly engaged in anticompetitive conduct by following the directive of H.F.2073 and providing free CNA training only at state colleges, universities, and high schools. Indeed, Plaintiffs admit that the "legislatively enacted law *requires* MnSCU to provide students free CNA training at the state's colleges and universities." (ECF No. 24 at 15 (emphasis added); *see also id.* at 35 ("The legislature could have easily offered a grant program to all similarly situated entities, public or private, who offered CNA training programs. It did not.").)

The Minnesota legislature exercised its sovereign authority when it chose to appropriate funds for free CNA programming at state colleges, universities, and high schools. Thus, the state agencies and their officers and agents implementing that legislative directive are immune from suit under the Sherman Act. *See Parker*, 317 U.S. at 352 (explaining that the "state command" to a state commission and program committee set forth in the California Prorate Act did not violate the Sherman Act); *id.* at 350–51 ("We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or *its officers or agents* from activities directed by its legislature." (emphasis added)).

Plaintiffs argue that HealthForce—the entity tasked with implementing the Initiative—is a "non-state agency," and thus does not qualify for *Parker* immunity.[6] (ECF No. 24 at 18; ECF No. 31 at 10.) But the MnSCU Board designated HealthForce as a center of excellence under Minnesota Statute Section 136F.31, and thus HealthForce falls under MnSCU. *See Breaker v. Bemidji State Univ.*, 899 N.W.2d 515, 520 (Minn. Ct. App. 2017) (describing Minnesota state colleges and universities as "arms" of the state); *Latour*, 2001 WL 185085, at *2 (noting that MnSCU "is an arm of the state"); *see also* Minn. State Centers of Excellence, https://www.minnstate.edu/coe/index.html, (identifying HealthForce as a MnSCU center of excellence).

Plaintiffs contend that even if HealthForce qualifies as a state agency, it is a nonsovereign actor and so not entitled to *Parker* immunity. *See N. Carolina State Bd. of Dental Examiners*, 574 U.S. at 505 ("State agencies are not simply by their governmental character sovereign actors for purposes of state-action immunity."). This leads to Defendants' argument that even if *Parker* immunity does not apply, they are immune from the Sherman Act claim under *Hallie*. (ECF No. 13 at 14.)

---

[6] Plaintiffs do not dispute that the OHE and MnSCU are state agencies. Minnesota Statute Section 136A.01 created the OHE and lists its responsibilities. Minnesota Statute Chapter 136F provides for MnSCU, including its Board of Trustees, which "consists of 15 members appointed by the governor." Minn. Stat. § 136F.02, subdiv. 1; *see* Minn. Stat. § 136F.06 (MnSCU Board of Trustees' powers and duties); *see also Latour v. Minneapolis Cmty. & Tech. Coll.*, No. C7-00-1649, 2001 WL 185085, at *2 (Minn. Ct. App. Feb. 27, 2001) (The MnSCU Board's "status as a state agency may be inferred from Minn. Stat. § 136F.79 (2000): 'The board is the sole state agency to receive and disburse federal funds.'").

2.      Immunity under *Hallie*

The Sherman Act confers immunity on a State's anticompetitive policies out of respect for federalism, but "it does not always confer immunity where . . . a State delegates control over a market to a nonsovereign actor." *N. Carolina State Bd. of Dental Examiners*, 574 U.S. at 505. For immunity to apply, the anticompetitive conduct of nonsovereign actors must "result from procedures that suffice to make it the State's own." *Id.* at 506. Generally, a state law or regulatory scheme cannot be the basis for antitrust immunity unless it satisfies a two-part test: (1) "the State has articulated a clear . . . policy to allow the anticompetitive conduct"; and (2) "the State provides active supervision of [the] anticompetitive conduct." *Id.* (citing *F.T.C. v. Ticor Title Ins.*, 504 U.S. 621, 631 (1992)). Under *Hallie*, sometimes a nonsovereign actor can be excused from the second prong of the test. *N. Carolina State Bd. of Dental Examiners*, 574 U.S. at 508 (citing *Hallie*, 471 U.S. at 45, 47); *see Hallie*, 471 U.S. at 47 ("[A]ctive state supervision is not a prerequisite to exemption from the antitrust laws where the actor is a municipality rather than a private party."). The Court addresses each prong in turn.

a.      <u>Articulated-Policy Requirement</u>

To satisfy the requirement of a State's clearly articulated policy to allow the anticompetitive conduct, "a state legislature need not 'expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects.'" *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 (2013)

(citation omitted). The clear articulation requirement is met if the challenged action is a "foreseeable result" of the State's authorization. *Id.* at 227 (citing *Hallie*, 471 U.S. at 42).

H.F. 2073 dictates that state funds will be transferred "to the Board of Trustees of the Minnesota State Colleges and Universities for HealthForce Minnesota for HealthForce Minnesota to coordinate and implement the Next Generation Nursing Assistant Training Program," and that "[t]he program must use a 'free up-front' model for covering the student costs." (Compl. ¶ 82 (quoting H.F. 2073); *see id.* ¶ 120 (alleging H.F. 2073's "mandate[] . . . to be implemented through the defendants"); *id.* ("the law and the actions of the defendants reveal a mandate of what is essentially a price-fixing arrangement").) The complaint alleges that H.F. 2073 funds free CNA training by state colleges, universities, and high schools; it does not fund such training by private entities, despite at least one private entity having received federal funding for such training in the past. (*Id.* ¶ 104; *see also id.* ¶ 149 (alleging that H.F. 2073 "provides funding for *only* CNA training programs run by a Minnesota state college, university, or high school, but not a training program run other entities such as the plaintiffs. It does not provide a process for these funds to be granted to private entities." (emphasis added)).)

When States fund public K–12 education, the exclusion of funding for private-school education is a foreseeable anticompetitive result. Similarly, the Court concludes that H.F. 2073's alleged displacement of competition by providing free CNA training to state entities is the "inherent, logical, or ordinary result of the exercise of authority

delegated by" the Minnesota legislature to Defendants. *Phoebe Putney Health Sys.*, 568 U.S. at 229. And so "the State must have foreseen and implicitly endorsed" the anticompetitive effects of its delegation of authority to Defendants. *Id.*

As for HealthForce, H.F. 2073 directs "HealthForce Minnesota to coordinate and implement" the free CNA training program at colleges, universities, and high schools. (Compl. ¶ 82 (quoting H.F. 2073); *see id.* ¶ 83.) And so, even if HealthForce is considered a nonsovereign entity, it "has been delegated authority to act or regulate anticompetitively" by the Minnesota legislature. *Phoebe Putney Health Sys.*, 568 U.S. at 228. The Court finds that the clear-articulation requirement is satisfied.

   b.   Active-Supervision Requirement

The parties dispute whether the active-supervision requirement applies here. As noted, the active-supervision requirement does not always apply to nonsovereign entities. *See, e.g., Hallie*, 471 U.S. at 47. It does apply to "any nonsovereign entity—public or private—controlled by active market participants." *N. Carolina State Bd. of Dental Examiners*, 574 U.S. at 510. This includes "[s]tate agencies controlled by active market participants, who possess singularly strong private interests." *Id.* That is because such active market participants "pose the very risk of self-dealing [the] supervision requirement was created to address." *Id.* Whether the active-supervision requirement applies depends on "the risk that active market participants will pursue private interests in restraining trade." *Id.; see id.* at 511–12 ("[A] state board on which a controlling number

14

of decisionmakers are active market participants in the occupation the board regulates must satisfy [the] active supervision requirement.").

With this background in mind, the Court has considered the complaint and concludes that the active-participant requirement does not apply here.

The complaint alleges generally that "the anti-competitive policy is not 'actively supervised' by the state." (Compl. ¶ 119). But it does not plead that any of the defendants—the MNSCU board members, the OHE, HealthForce, or their leaders—are active market participants that compete with Plaintiffs in the CNA training market. Rather, Plaintiffs allegedly compete with Minnesota state colleges and universities— which are public entities.[7] Absent a showing to the contrary, "an arm of the State" acts in the public interest. *Hallie*, 471 U.S. at 45; *see also Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 573 (3d Cir. 2017) (noting there was "little or no danger" that the municipality in *Hallie* would become "involved in a *private* price-fixing arrangement" (quoting *Hallie*, 471 U.S. at 47)).

To the extent that Plaintiffs attribute their competition with state colleges and universities to the MnSCU board members in their official capacities, the members are "appointed by the governor," and may be removed by the governor at any time for cause, after a notice and hearing. Minn. Stat. § 136F.02, subdiv. 1; *see id.,* subdiv. 2; Minn. Stat.

---

[7] *See* ECF No. 31 at 11 (arguing in reply to Plaintiffs' motion for preliminary injunction that "MNSCU educational institutions" and Plaintiffs "are competitors in the same market to solicit client-students for CNA training").

§ 15.0575, subdiv. 4. At least one court has held that such powers reduce the risk that a state agency's board members "would pursue private interests because the Governor should appoint individuals he believes will carry out state interests, and he can remove a member for failing to do so." *Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*, No. CV 14-1533 (JAG), 2015 WL 9484490, at *8 (D.P.R. Dec. 29, 2015). The complaint offers no factual allegations reasonably inferring that any Defendants are active market participants possessing strong private interests in restraining competition in the CNA training market. So the Court will not impose the active-supervision requirement on Defendants.

Thus, even if the Court had jurisdiction over the Sherman Act claim, Defendants are immune from suit for the Sherman Act violations alleged in the complaint. Count I is dismissed.

### III.      Count II: Equal Protection Claim

Defendants contend that Plaintiffs' equal-protection claim should be dismissed based on sovereign immunity principles established under the Eleventh Amendment, which bars a suit brought by a private individual against a State. *McDaniel v. Precythe*, 897 F.3d 946, 951 (8th Cir. 2018). Defendants also move to dismiss this claim on the merits.

#### A.      *Sovereign Immunity and* **Ex parte Young**

Plaintiffs bring an equal protection claim against Defendants in their official capacities, seeking a declaratory judgment and injunctive relief barring them from

implementing H.F. 2073. (Compl. at 1–2 (caption), 32 (prayer for relief).) Under the *Ex parte Young*[8] exception to Eleventh Amendment immunity, a private party may sue state officials in their official capacities for prospective injunctive relief. *McDaniel*, 897 F.3d at 951–52. To determine whether the *Ex parte Young* exception applies, a court conducts a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted).

*Injunctive v. monetary relief.* Defendants acknowledge that the complaint requests declaratory and injunctive relief but insist that Plaintiffs "really seek" an award of grant money. (ECF No. 13 at 18.) If a claim seeks damages against a state employee in his official capacity, then the Eleventh Amendment bars the claim. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). Construing the complaint in the light most favorable to Plaintiffs, as the Court must, the complaint seeks to stop the implementation of free CNA training under H.F. 2073.[9] It does not seek an order requiring Defendants to include Plaintiffs as training entities for Next Generation Initiative students or otherwise provide

---

[8] *Ex parte Young*, 209 U.S. 123 (1908).

[9] H.F. 2073 provides for more than the challenged free CNA training; it "may also be used for marketing and outreach across the state." (Compl. ¶ 82 (quoting H.F. 2073).) Plaintiffs claim that they have no issue with the H.F. 2073 appropriation being used for these alternative purposes, rather than free CNA training. (ECF No. 24 at 27 ("If the appropriation continues to be used for advertising for instance, that is of no concern to Plaintiffs.").)

them with funds from the H.F. 2073 appropriation. The Court is unpersuaded that the complaint seeks monetary relief, and so this argument fails.

*Prospective v. retrospective relief.* Defendants argue that Plaintiffs' relief is not prospective because through H.F. 2073, the Minnesota legislature has already appropriated the $3 million to MnSCU for the Next Generation Initiative. (ECF No. 13 at 19.) In their reply brief, Defendants assert that MnSCU "has already used the appropriated money to implement the Next Gen Initiative through agreements with colleges and universities." (ECF No. 26 at 5 (citing Compl. ¶¶ 77–81).) But the complaint paragraphs cited by Defendants address grant agreements entered *before* H.F. 2073 was passed. (*Compare* Compl. ¶¶ 77–81 *with id.* ¶ 82.) And the complaint alleges that under H.F. 2073, "the policy to provide students with free CNA training will continue to June 30, 2025," (*id.* ¶ 84), suggesting that the allocation is continuing. These allegations do not support Defendants' assertion that the H.F. 2073 appropriation has been fully allocated.[10] At this stage of the litigation, the argument that the relief requested is retrospective fails.

---

[10] At the hearing, Defendants claimed that the funding from H.F. 2073 has been committed to contractual relationships and administrative costs. Had Defendants presented such evidence, the Court would not consider it at this stage of litigation. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) ("When ruling on a motion to dismiss under Rules 12(b)(6) or 12(c), a district court generally may not consider materials outside the pleadings.").

**B.      The Merits**

Defendants also challenge the allegations of the merits of Plaintiffs' class-of-one equal protection claim. The Equal Protection Clause essentially provides that "all persons similarly situated should be treated alike." *Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551, 563 (8th Cir. 2024) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Equal protection claims may be brought by a "class of one," when the plaintiffs allege that (1) they have been "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Id.* at 564 (citing *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019)).

Plaintiffs maintain that rather than rational-basis scrutiny, strict scrutiny applies based on their "right of occupational choice." (ECF No. 24 at 31.) They argue that Defendants "completely prevent the Plaintiffs from seeking their profession or occupation in providing CNA training programs," (*id.* at 32), but cite no such allegations in the complaint.[11] And they acknowledge that "[t]he Eighth Circuit has not expressly stated that the right to pursue a profession is a fundamental right or whether a strict scrutiny analysis is necessary when a statute interferes with personal rights." (*Id.*) The Court will apply the rational-basis scrutiny to this claim.

---

[11] The evidence presented in opposition to Plaintiffs' motion for preliminary injunction suggests that Plaintiffs could not allege that they are completely prohibited from engaging in their desired occupation. (*See, e.g.*, ECF No. 27 at 8–10 (summarizing certain Plaintiffs' 2020–2023 enrollment and test taker data); *see also* ECF No. 29-1–29-4.)

*Similarly situated.* The threshold inquiry is whether Plaintiffs are "similarly situated to others who allegedly received preferential treatment." *Sanimax USA*, 95 F.4th at 564 (citing *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015)). "This presents a significant hurdle: 'the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in *all material respects*.'" *Id.* (citation omitted). Otherwise, the class-of-one claim fails. *Id.*

Plaintiffs—which are private businesses—are simply not similarly situated to the public institutions that offer free CNA training. Minnesota State colleges and universities are public schools governed by a Board of Trustees and subject to statutory obligations. *See* Minn. Stat. chs. 135A–136F. In contrast, Plaintiffs are private businesses, all but one of which are for-profit. (Compl. ¶¶ 7–15.)

Plaintiffs cite no case in which a court that has held that public and private educational entities were similarly situated for an equal protection claim. Indeed, courts have held the opposite, even where they provide similar services. *See, e.g.*, *Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1055 (9th Cir. 2014) ("[S]imilarities [of services provided] notwithstanding, ATC and the City are not 'similarly situated' providers. In contrast to ATC's telecommunication operations, which are entirely commercial, the City's telecommunication operations are primarily public in nature."); *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 826 (E.D. Pa. 1998) (concluding that a state public entity and a private for-profit entity were not substantially similar, noting that the

defendant was "not required to subsidize development for a private entity to the same extent as for a public agency; there is a fundamental difference between public agencies and private companies"), *aff'd*, 165 F.3d 242 (3d Cir. 1999). For these reasons, Plaintiffs fail to satisfy the first requirement for a class-of-one equal protection claim.

*Rational basis*. Even if Plaintiffs and the Minnesota schools are similarly situated, the complaint does not allege facts plausibly inferring that the different treatment had no rational basis. A rational-basis review "'is a paradigm of judicial restraint,' and 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Doe, I v. Peterson*, 43 F.4th 838, 842 (8th Cir. 2022) (citing *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). On rational-basis review, a classification in a statute bears "a strong presumption of validity" and "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Beach Commc'ns*, 508 U.S. at 314–15 (citations omitted). Courts "are not required to consider the legislature's stated purpose as long as the law could rationally further some legitimate government purpose." *Birchansky v. Clabaugh*, 955 F.3d 751, 757 (8th Cir. 2020). "Where there are plausible reasons for the legislature's action," the court's equal-protection inquiry ends. *Id.* (citing *Beach Commc'ns*, 508 U.S. at 313–14).

The complaint explains that the Next Generation Initiative was created to address "a shortage of nurses and in particular, nursing assistants to such an extent that it endangered the health and welfare of its citizens." (Compl. ¶ 1.) H.F. 2073 appropriated

$3 million for the Next Generation Initiative and directed HealthForce to implement it. (*Id.* ¶ 82.) Government entities have "a legitimate interest in protecting the health and safety of [its] residents." *Mills v. City of Grand Forks*, 614 F.3d 495, 501 (8th Cir. 2010); *see Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 517 (S.D.N.Y. 2023) (noting a state's interest in reducing "the risk of staffing shortages" of healthcare employees), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024). The risk of staffing shortages, which would impair the health and safety of Minnesotans, is a legitimate government purpose. The question is why the private entities were excluded from this initiative.

The parties do not provide a definitive reason the funding for free CNA training programs was limited to public schools, but "the absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis." *Beach Commc'ns*, 508 U.S. at 315 (cleaned up, citation omitted). Defendants suggest possible rational reasons that private entities were excluded from funding that are not addressed in the complaint. For example, Defendants may have determined that state colleges, universities, and high schools have capacity to fulfill the Minnesota legislature's mandate without the use of private entities. (ECF No. 13 at 23.) Or perhaps they opted to implement the initiative with the public schools because it was easier to administer the program and manage the use of funds. (*Id.*) Plaintiffs fail to address or otherwise negate the proffered possible reasons. "[B]ecause all that must be shown is any reasonably conceivable state of facts that could provide a rational basis for the classification, it is not

necessary to wait for further factual development in order to conduct a rational basis review on a motion to dismiss." *Gilmore v. Cnty. of Douglas*, 406 F.3d 935, 937 (8th Cir. 2005) (cleaned up, citation omitted). In *Gilmore*, the Eighth Circuit affirmed the dismissal of an equal protection claim where the district court considered "a conceivable basis for the government action at issue." *Id.* at 940; *see also Johnson v. City of Little Rock*, 164 F. Supp. 3d 1094, 1100–01 (E.D. Ark. 2016) (dismissing class-of-one equal protection claim because the city's suggested scenario passed rational-basis review).

The Court concludes that plausible reasons exist for funding free CNA training at public colleges, universities, and high schools without funding such training through private entities.[12] The complaint fails to assert facts that could overcome the strong presumption of validity of H.F. 2073 or "negative every conceivable basis which might support it." *Beach Commc'ns*, 508 U.S. at 315. For these reasons, Count II is dismissed.

## IV.     Count III: Minnesota Constitutional Claim

Count III alleges that H.F. 2073 violates the Minnesota Constitution, which provides that "when a general law can be made applicable, a special law shall not be enacted except as [otherwise] provided." Minn. Const. art. XII, § 1. Under the Eleventh Amendment, "a federal court lacks jurisdiction to order state officials to 'conform their

---

[12] In responding to this argument, Plaintiffs assert a due process right of occupational choice, a claim not found in their complaint. (ECF No. 24 at 31–33.) The Court will not consider this new claim. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (citation omitted).

conduct to state law.'" *Let Them Play MN v. Walz*, 556 F. Supp. 3d 968, 975 (D. Minn. 2021)

(citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

Count III asks the Court to order state officials to comply with the Minnesota

Constitution by barring them from implementing the policy under H.F. 2073, (Compl. at

23), which "conflicts directly with the principles of federalism that underlie the Eleventh

Amendment." *Pennhurst*, 465 U.S. at 106. The Court lacks subject-matter jurisdiction over

Count III because the State has not consented to federal jurisdiction for claims arising

under the Minnesota Constitution. *See Minn. Voters All. v. Walz*, 492 F. Supp. 3d 822, 833

(D. Minn. 2020) (concluding that the court lacked jurisdiction to resolve claims that the

governor's executive order violated the Minnesota Constitution). Count III is dismissed.

## V.      Motion for Preliminary Injunction

Having dismissed Plaintiffs' claims, the Court denies Plaintiffs' motion for

preliminary injunction as moot.

## CONCLUSION

Based on the above and on all the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.      Defendants' motion to dismiss (ECF No. 11) is GRANTED; and

2.      Plaintiffs' motion for preliminary injunction (ECF No. 17) is DENIED AS

MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: August 12, 2024                    BY THE COURT:

                                          s/Nancy E. Brasel
                                          Nancy E. Brasel
                                          United States District Judge